## No. 11,817.

## Denver Tramway Corporation *v*. Gentry.

Decided June 6, 1927. Rehearing denied June 27, 1927.

Action for damages for personal injuries.   Judgment for plaintiff.

## *Affirmed.*

## *On Application for Supersedeas.*

1. Negligence—*Proximate Cause.*   In an action for damages for personal injuries against a street railway company, evidence held to support a finding that the motorman's negligence was the proximate cause of the accident resulting in the injuries to plaintiff.

2. *Personal Injuries.*   Concurring negligence of a truck driver will not relieve a street car company from liability for its motorman's negligence resulting in injury to one riding on the truck as a passenger.

3. Instructions—*Requests.*   There is no error in the refusal of the trial court to instruct on contributory negligence where there is no evidence to justify the giving of such an instruction.

4. Damages—*Excessive Verdict.*   Verdict of $2,000 for personal injuries held not excessive under the facts disclosed by the record, and not the result of bias, prejudice or passion on the part of the jury.

5. Instructions—*Damages.*   Instruction in an action for damages for personal injuries held to have properly stated items to be considered in estimating damages, and that the verdict must not exceed the amount alleged as damages.

6. Damages—*Personal Injuries—Instructions.*   There was no error in the giving of an instruction authorizing damages for permanent injuries in a personal injury case where there was evidence to support such an instruction.

7. Appeal and Error—*Evidence—New Trial.*   Motion for a new trial which states that "the court erred in admitting, over defendant's objections, certain evidence offered by plaintiff, to which rulings defendant excepted," held not sufficiently specific in view of Supreme Court rule 8, to entitle defendant to a review of the court's rulings on such questions,

*Error to the District Court of Arapahoe County, Hon. S. W. Johnson, Judge.*

Mr. GERALD HUGHES, Mr. H. S. ROBERTSON, Mr. W. A. ALEXANDER, for plaintiff in error.

Mr. ROBERT H. DUNLAP, Mr. FRED A. HARRISON, for defendant in error.

*Department Two.*

MR. JUSTICE BUTLER delivered the opinion of the court.

THE defendant in error obtained a judgment for damages for personal injuries sustained by her in a collision between a street car operated by the plaintiff in error and an automobile truck driven by the husband of the defendant in error. We will refer to the parties as they appeared in the court below.

The truck was going west on Colfax avenue. The plaintiff's husband sat at the left, driving; the plaintiff sat at his right, on the same seat. Paralleling and adjoining Colfax avenue to the south are the street car right of way and track. The truck was being driven slowly. The truck was turned to the left to proceed south on Yosemite street, a cross street, and as it was crossing the track, the truck was struck by a street car going west, was turned over, and the plaintiff was injured. The plaintiff testified that she was familiar with the road; that the road was rough, and her husband had to go slowly and pay attention to what he was doing; that she does not think her husband is hard of hearing; that she looked out through the back window of the truck at Akron street, and did not see any street car; that Akron street is about two blocks east of Yosemite; that she did not look any more; that she knew her husband was watching; that he was looking and watching

to see if there was any street car, and watching the touring cars too; that he was watching when he made the turn on Yosemite street; that there was nothing to obstruct the view; that she is positive that no bell was rung.    The husband testified that when crossing the street car track he was going very slowly—something like four miles an hour—because the crossing was "awful rough," and he was afraid of breaking the springs there; that he heard no alarm sounded and no gong; that in the neighborhood of half a block back he looked back for the last time, and "there was no street car for half a block back"; that there was nothing to obstruct the view for three or four blocks back.    Witness Langer testified that he was a cab driver; that he drove along by the side of the street car a block or so, making about twenty-five miles an hour; that the street car was going at the same speed he was going.    A Mrs. Hood testified that she got on the street car at Boston street (four blocks east of Yosemite street); that the motorman seemed irritable; that she sat down back of the motorman; that she got her change out, and just as she handed it to the motorman the crash came.    Two other passengers testified that Mrs. Hood was talking to the motorman at the time of the accident, or, according to one of them, just a moment before; and that the brakes were not applied.    One of them also testified that she did not hear any gong.    The motorman, testifying on behalf of the defendant, said that the speed of the street car at the time of the accident was approximately fifteen miles per hour; that he saw the truck ahead; that no signal was given indicating that the truck was about to turn; that the witness rang the gong and applied the brakes a little; that the truck slowed down, and the witness thought it was going to stop; that when the driver of the truck "tried to crawl over the tracks," the witness "applied the emergency brake and the accident occurred."    An ordinance of the town of Aurora forbids street cars to be propelled at a speed exceeding fifteen

miles per hour, and requires the motorman to ring the bell sufficiently loud to warn all persons of the approach of the car.

1. There was ample evidence to support the finding that the motorman was negligent, and that his negligence proximately caused the collision. If the plaintiff's husband also was negligent, such concurring negligence, under the facts in evidence, would not relieve the defendant from liability. *Colorado Mortgage Co. v. Rees,* 21 Colo. 435, 42 Pac. 42; *Carlock v. Denver & R. G. R. Co.,* 55 Colo. 146, 133 Pac. 1103; *Colorado Mortgage Co. v. Giacomini,* 55 Colo. 540, 136 Pac. 1039, L. R. A. 1915B, 364; *Willson v. Colorado & S. Ry. Co.,* 57 Colo. 303, 142 Pac. 174.

2. The defendant assigns as error the refusal of the trial court to instruct the jury on the question of contributory negligence. There was no evidence to justify the giving of such an instruction. *St. Mary's Academy v. Solomon,* 77 Colo. 463, 238 Pac. 22, 42 A. L. R. 964; *Campion v. Eakle,* 79 Colo. 320, 246 Pac. 280, 47 A. L. R. 289; *Hedges v. Mitchell,* 69 Colo. 285, 194 Pac. 620.

3. Another assignment is that the verdict for $2,000 is excessive. The plaintiff, according to her testimony, was in good health prior to the accident; "hadn't an ache or a pain"; hadn't been in care of a doctor within six years before the accident; did all her own work; took care of the chickens and her housework and laundry work; went out with her husband and helped shovel and load coal and clean ashpits; did all kinds of work, just like a man. This testimony was corroborated by her husband. The plaintiff testified that the truck was turned over, and "wedged" her down in the car; that her back and shoulders were hurt; also the lower part of her spine; that her hip and her limbs were black and blue all the way down; that her right arm was bruised; that she has never been rid of the pain; that at the time of the trial (over five months after the accident), her back and hips hurt and her limbs hurt and were swollen; that there were great big lumps that never went away;

that she still suffered worse than she ever suffered in her life; that she was home and in bed the first two weeks and four days after the accident and was under the doctor's care; that she could not move, but had to be turned over by her husband; that she was taken to the hospital June 16 and remained there until July 25, during which time she was not able to be out of bed at all; that she then went home, where she remained three weeks; that her limbs were swollen and hurt so badly that she couldn't sleep, and she was so nervous that she couldn't be "rational"; that she was not able to do anything about the place; that the doctor sent her back to the hospital August 15, where she remained until September 5, when she went home. The plaintiff's doctor corroborated much of this testimony as to the injuries, and testified that the medical term for the plaintiff's condition is "phlebitis"—that is to say, inflammation of the veins; that it causes the blood to coagulate in the veins, producing an enlargement or knotting; that just a few days before the trial he examined her again, and that her leg was swollen and inflamed; that the ailment is usually a painful one; that a bruise would cause phlebitis, and so would "other things"; that in his opinion phlebitis existed at the time of the trial, and was due to the injury; that such condition usually clears up in thirty days; that if it does not clear up within thirty days, it would indicate that "the chances are it never would clear up"; that at first the plaintiff had to have morphine all the time to quiet her pain, "so that she could get any rest at all"; that the age of a patient has a bearing; that as the patient grows older the chances of recovery are very much less; that from his examination of the plaintiff (who was 55 years old at the time of the trial), it is his opinion that it is doubtful if she ever completely recovers. A doctor, called by the defendant, testified that he examined the plaintiff on one occasion; that that was the day before the trial; that she had a very foul set of teeth in the

lower jaw; that she had pyorrhea; that both legs below the knee were considerably swollen and red; that this was due, he thinks, to varicose veins.; that he could find no other evidence of disease or infection; that he found no bruises or abrasions, but did not examine her back with her clothing ~· that her trouble, first of all, is infection from bad teeth; then she had varicose veins, which probably "has stayed there for some considerable time"— probably for years; that he did not find phlebitis present, or any evidence of it; that phlebitis and varicose veins are sometimes mistaken for each other, it being easy to diagnose the latter as the former; that in his mind there is no question concerning his diagnosis; that phlebitis is generally due to infection, something similar to focal infection from the teeth or the tonsils; that phlebitis is not caused from "an external injury, such as a blow, unless some sort of infection is started"; that a varicose vein is a deformity of the vein, without infection; that the plaintiff's condition due to varicose veins is chronic, and "will continue the rest of her life, unless there is some operation performed"; that he does not think that the plaintiff's condition is the result of a blow. An interne in the hospital, a doctor called by the defendant, testified that he graduated from a medical school in 1925; that upon the admission.of the plaintiff to the hospital, he examined her; that he diagnosed her condition as pyorrhea, with resulting infection; that she was not suffering from phlebitis; that he agrees with the statement made by the plaintiff's doctor that if phlebitis is not cured within 30 days, it probably would result in a permanent condition; that the 30 days start running from the date the underlying cause is removed; that upon her admission to the hospital the plaintiff was suffering pain in the back, and through the lower limbs, from the thigh down, and some headache; that to relieve the pain, she was given codein, a more powerful drug than any ordinary sedative; that he doesn't know what caused the pain.

That the plaintiff was injured when the truck was overturned, and that she suffered pain, cannot be doubted. Concerning the cause and the nature of her condition, the doctors disagree—not an uncommon thing in personal injury cases. It was within the province of the jury to determine these matters. We cannot say, as a matter of law, that the verdict was excessive; much less can we say that it was the result of bias, prejudice or passion on the part of the jury. *City of Denver v. Stein,* 25 Colo. 125, 53 Pac. 283; *Denver & R. G. R. Co. v. Heckman,* 45 Colo. 470, 101 Pac. 976; *Vallery v. Barrett,* 63 Colo. 548, 167 Pac. 979; *Campion v. Eakle,* 79 Colo. 320, 246 Pac. 280, 47 A. L. R. 289.

4. Instruction six relates to damages. It is as follows: "You are instructed that, if you find for the plaintiff, you will assess her damages in any amount you deem proper on a consideration of all the evidence, not exceeding $20,000.00, and in estimating such damages you may consider the physical and mental pain she has suffered and continues to suffer. You may also consider the extent of plaintiff's injury, and if you find that the use of her legs is impaired, you may also consider the fact that she is deprived of the pleasure and satisfaction in life that those only can enjoy who are possessed of the free use of all the members of the body. You may further consider the impairment of her ability, either past or future, to perform her household duties, and the expense which she will continue to incur for medical services, and allow such damages as will reasonably and justly compensate the plaintiff for her injuries."

To this instruction counsel urge several objections. We copy them from their brief:

"[1] * * * it particularly sets out the allegations contained in the complaint relative to injuries and relative to the amount of damages asked and thereby particularly draws the attention of the jury to the fact that the plaintiff should be given damages in the event the verdict should be in her favor in an amount not exceed-

ing $20,000.00.  [2] The giving of the above instruction was further error in that it instructed the jury that they might, in considering the damage as sustained by the plaintiff, compensate her for the expenses which she had incurred for medical services, when the testimony is silent on any expenses as incurred by the plaintiff. [3] Further instructed the jury that they might return a verdict in favor of the plaintiff for permanent injuries which she may have suffered and the testimony utterly fails to show that the plaintiff has ever suffered any permanent injury as a result of this accident.''

There are thus presented three objections.  (1) It was proper—indeed, necessary—for the court to call the jury's attention to the items to be considered in estimating the damages; and it also was proper to instruct the jury that the verdict must not exceed the amount alleged as damages.  (2) The second objection is without force.  The instruction neither directed nor permitted the jury to include in the verdict any expenses that the plaintiff had incurred for medical services. (3) The third objection cannot be sustained.  There was evidence tending to show that the plaintiff suffered permanent injury as a result of the collision.

5. It is suggested, without argument, that the court erred in the admission of evidence over the defendant's objections.  Rule 8 of this court provides that where a motion for a new trial is filed, only questions presented in such motion will be considered on review.  In *Jones v. Dunlap,* 78 Colo. 221, 239 Pac. 989, the motion for a new trial stated that ''the court erred in rejecting evidence and testimony offered by the plaintiff material to the proof of allegations of his complaint herein.''  We held the motion insufficient to preserve the question for review, saying:  ''All errors relied on as a ground of a motion for a new trial should be specifically set forth in the motion.  *  *  *  In this case, the motion should have specifically designated the evidence improperly  *  *  * excluded.  Having failed to do so, the rulings complained

of cannot be considered on review. * * * Moreover, under rule 8 of this court, only questions presented in such motion for a new trial will be considered here.''

In the present case, the motion for a new trial stated that ''the court erred in admitting, over the defendant's objections, certain evidence offered by the plaintiff and to which rulings the defendant then and there duly excepted.'' This is insufficient to entitle the defendant to a review of the trial court's rulings on the defendant's objections to the admission of evidence.

The case was tried fairly, and was submitted to the jury under proper instructions; the evidence is sufficient to support the verdict, which is not excessive. Finding no reversible error in the record, we affirm the judgment.

MR. CHIEF JUSTICE BURKE, MR. JUSTICE ADAMS, and MR. JUSTICE CAMPBELL concur.