No. 16,573.

Heckman et al. *v.* Warren.

(238 P. [2d] 854)

Decided November 26, 1951.

Messrs. Wood & Ris, for plaintiffs in error.

Mr. RAYMOND M. SANDHOUSE, Mr. FRANCIS L. SHALLEN-
BERGER, for defendant in error.

*En Banc.*

MR. JUSTICE ALTER delivered the opinion of the court.

CLINTON WARREN began an action in the district court
against Norman Heckman and the Cudahy Packing Com-
pany, a corporation, to recover judgment for damages al-
legedly sustained by him while helping to extinguish a
fire on one of the Cudahy Packing Company's trucks
being driven by Heckman. The jury returned its verdict
in Warren's favor in the sum of $4,750, judgment was
duly entered on the verdict, and Heckman and the Cud-
ahy Packing Company are here by writ of error seeking
a reversal.

We will hereinafter refer to Warren by name or as
plaintiff; to Norman Heckman by name, and to the Cud-
ahy Packing Company as Company, and the two thereof
collectively as defendants.

Warren alleged in his first cause of action, after formal
allegations, that on November 24, 1948, while Heckman
was the agent and employee of the defendant Company,
acting within the scope of his employment, he drove a
motor truck belonging to Cudahy onto plaintiff's prem-
ises at Atwood, Colorado; that said motor truck was on
fire at the time and place before mentioned and created
a dangerous condition upon plaintiff's premises, endan-
gering his person and property; that he, in attempting
to protect himself and his property, was injured as a
result of the carelessness and negligence of defendants
and sustained personal injuries and business losses in the
aggregate amount of $10,000, for which he asked judg-
ment. In his second cause of action plaintiff alleged that
on the date and at the place above mentioned Heckman
drove the Company's motor truck, while afire, onto
plaintiff's premises, and that Heckman, acting within the

course and scope of his employment, "sought, solicited, and secured the aid of plaintiff in extinguishing said fire and while so engaged, and due to the negligence and carelessness of the defendants," plaintiff sustained serious injuries necessitating the expenditure of large sums of money for hospitalization, medical services and nursing attention; that he was subjected to great pain and suffering, both physical and mental; that the injuries were of a permanent nature and prevented him from engaging in his business for an extended period of time, all to his damage in the sum of $10,000, for which he also prayed judgment.

Defendants, for their answer to the first cause of action, admitted the ownership of the truck, the employment of Heckman, and the driving of the truck on plaintiff's premises; denied that the truck was on fire due to the carelessness and negligence of the defendants; denied that the truck, at the time and place mentioned in the first cause of action, was a dangerous instrumentality creating a dangerous condition upon plaintiff's premises, endangering his person and property; denied that at the time of the accident plaintiff was then and there protecting his person and property; and further denied that the injuries suffered by plaintiff resulted from the carelessness or negligence of defendants, or either of them; denied that plaintiff "has been damaged in the sum of $10,000.00." Defendants admitted that plaintiff incurred injuries requiring medical attention and hospitalization, but denied permanent injuries; and likewise admitted that plaintiff, as a result of the injuries incurred, was disabled from attending to his business for a period of time.

As a first defense to plaintiff's second cause of action, after the admissions and denials set forth in the answer as a defense to the first cause of action, defendants denied that they, or either of them, sought or solicited plaintiff's aid in extinguishing the fire on the truck.

For further separate defense to both causes of action,

defendants alleged: (1) If plaintiff's person and property was endangered by the acts of the defendants, such danger had ceased to exist prior to the happening of plaintiff's injuries; (2) plaintiff was a volunteer at the time his injuries were sustained and therefore neither defendant is liable for damages; (3) plaintiff was guilty of negligence and carelessness proximately causing or contributing to the accident and his injuries resulting therefrom; (4) the accident and plaintiff's injuries were the result of an unavoidable accident; (5) plaintiff voluntarily assumed the risk of the happening of the accident and the injuries resulting therefrom; (6) if plaintiff was rendering services and aid at the time of the accident at the solicitation or request of Heckman, he thereby became an employee of the Cudahy Company, an employer with liability insurance under the provisions of the Workmen's Compensation Act, and, therefore, could not maintain an action against defendants.

The evidence may be thus summarized: Plaintiff is the owner and operator of a filling station and garage at Atwood, Colorado, as well as a grocery store, private home, and one cabin, all of said improvements being in close proximity to each other and fronting on a main highway from Sterling to Denver. The gasoline pumps, three in number, were approximately fifteen feet from the station and other buildings on plaintiff's premises.

On the morning of November 24, 1948, Heckman, an employee of the Company, was instructed to drive one of its motor trucks from Sterling to Denver, the truck having theretofore been loaded by other Company employees. Before starting to Denver Heckman inspected the truck and the load thereon and determined therefrom that they were in proper condition for transportation. When a short distance from Atwood, Heckman first noticed smoke rising between the cab and the bed of the truck. He stopped the truck and emptied his fire extinguisher on a tarpaulin which was on fire and wedged between the cab and the bed of the truck, and which he

discovered was resting on the manifold and within three to six inches of the gas tank on the truck. After an unsuccessful attempt to extinguish the fire and remove the tarpaulin, he drove the truck into plaintiff's filling station and stopped within a short distance of the gasoline pumps and the buildings thereon and asked plaintiff for a bucket of water, which, having been obtained and thrown on the tarpaulin, did not extinguish the fire. Plaintiff took a fire extinguisher, and, in an unsuccessful attempt to extinguish the fire, emptied it. Then Heckman moved the truck within three or four feet of the pumps on said premises in order that it might be reached by a hose which plaintiff provided, and with water therefrom the fire was brought under control. Plaintiff and Heckman then attempted to remove the tarpaulin, and, while plaintiff was pulling on a rope that had been inserted through a hole in the tarpaulin, it ripped, causing plaintiff to slip and fall from the bed of the truck and his leg was broken. When plaintiff's accident occurred, the fire was not completely extinguished, but, while not aflame, was still smoldering. Plaintiff was removed to the hospital where his leg was improperly set and he subsequently returned thereto and had the leg rebroken and reset, necessitating his remaining in the hospital for a period of six or more weeks. During his confinement in the hospital, and for some period of time after his return home, it was necessary for him to employ additional help in the operation of his filling station and supplying his customers on a gas delivery route.

Plaintiff testified that he had incurred or expended the following amounts necessitated by reason of his injuries: $216.00 for doctors; $374.25 for hospitalization; $841.33 for the employment of substitute help and assistance, and that he had sustained a further damage of $600.00 for business loss because of unsatisfactory service to customers by his employees, and, in addition thereto, he testified to other business losses which were occasioned by his injuries and consequent inability to give

his business his personal attention. These losses were estimated rather than reduced to an exact monetary value. In addition to the physical and mental pain and suffering resulting from plaintiff's injuries, there is evidence that he will suffer some permanent physical impairment in the use of his leg.

The specifications of points are argued here under three subdivisions: 1. Failure of the court to direct a verdict and to set aside the verdict returned by the jury; 2. error in instructions; 3. refusal to strike evidence concerning earnings.

Defendants' alleged grounds upon which their motion for directed verdict is based are:

"1 — That the plaintiff has failed to produce any evidence from which an inference of negligence could be drawn, which negligence proximately caused the accident suffered by the plaintiff and his resulting injury and damage. From the evidence introduced by the plaintiff reasonable men could not differ on the inference to be drawn that there was no negligence on the part of the defendants which proximately caused the plaintiff's accident and his injuries and damages resulting therefrom.

"2 — It appears from the plaintiff's own evidence, as a matter of law, that the plaintiff was guilty of negligence which proximately caused or contributed to his accident and his resulting injuries and damages.

"3 — The action of the plaintiff which led to the happening of his accident, and the actions of the defendant Heckman, were identical so far as the cause of the accident was concerned. In the event the court determines that, as a matter of law, plaintiff was not guilty of negligence, by the same reason the defendant Heckman was not guilty of negligence. Accordingly, as an additional ground for this motion, it appears from the evidence that the plaintiff's injuries were suffered as a result of an unavoidable accident.

. "4 — It appears clearly and without dispute, from the plaintiff's own evidence, that plaintiff was a volunteer

assisting the defendant Heckman at the time of his accident and that no emergency existed at that time, and that the only duty owed to the plaintiff was not to injure him as the result of gross negligence, willfulness, or wantonness. A volunteer having no cause of action for simple negligence on the part of the person being assisted, as a matter of law, there is no liability from the defendants to the plaintiff. The plaintiff must be held to have assumed the risk of falling when climbing upon the defendant's truck."

"As a further ground for dismissing the complaint, and in the alternative, if the plaintiff was not a volunteer, he was an emergency employee, that is, an employee within the meaning and definition of the Workmen's Compensation Act of Colorado, engaged by the defendant Heckman, on behalf of the defendant, Cudahy Packing Company, under an implied or apparent authority resting in an employee to save equipment and goods of his employer in an emergency. That plaintiff is entitled to the benefits of the Workmen's Compensation Act; that his rights thereunder are exclusive; and that he has no rights to be enforced by a civil suit of this nature against either the Cudahy Packing Company, or the defendant Heckman."

Rather than attempt a consideration of the specifications of points in the order in which they are presented here, it seems to us important at the outset to determine the relationship existing between Warren and the defendants at the time when the truck, afire, was driven on plaintiff's premises and his services rendered in connection therewith.

There are two causes of action set forth in the complaint, the first of which is based upon the carelessness and negligence of defendants resulting in injuries to plaintiff, for which he seeks judgment. In the second cause of action plaintiff seeks to recover damages from defendants for injuries resulting from the latter's carelessness and negligence and while plaintiff was engaged

as an emergency employee. If plaintiff's evidence established either cause of action by a preponderance thereof, and the jury so found, plaintiff is entitled to recover.

With reference to plaintiff's emergency status, it is not contended that defendant Company had any direct connection in establishing such relationship. If that relationship existed as between plaintiff and defendant Company, it resulted from a request or solicitation by Heckman for assistance in extinguishing the fire on defendant Company's truck, and an emergency must have existed in relation thereto at the time of the request and solicitation.

■ The prevailing rule is:

"* * * that an employee who is confronted with an unforeseen situation which constitutes an emergency, which rendered it necessary, in his employer's interest, that the employee have temporary assistance, is to be deemed to have had implied authority to procure necessary help and thus create between the employer and the emergency assistant the relationship of master and servant, which will engage responsibility on the part of the employer to the assistant for injuries chargeable to the neglect of the employer. * * *" 35 Am. Jur., p. 592, §164.

"It is the emergency that gives rise to the implied authority; and if it does not in fact exist, then neither does the implication of authority arise. In order to support a finding that an emergency existed, the evidence must show that the situation was created suddenly and unexpectedly. * * * It has, however, been held that the bare fact that it is possible to proceed without the services of the person employed does not in itself determine that there is no necessity for the employment. However this may be, in order to support a recovery, it is not sufficient to show simply that the assistant believed that an emergency existed.

"The question whether the circumstances of any particular case constituted what might be deemed to have

been an 'emergency' is generally one for the jury's determination." 35 Am. Jur., p. 594, §165.

See, also, *Sibley v. City Service Transit Co.,* 2 N.J. Rep. 458, 66 A. (2d) 864; *Harris v. Railway Express Agency,* 178 F. (2d) 8; 76 A.L.R., 964; 2 Shearman & Redfield on Negligence (Rev. ed.) p. 439, §189; 56 C.J.S., p. 1091, §328 (b); Restatement of the Law, Agency, p. 188, §79.

There was competent evidence before the jury, which, if believed by it, would warrant a finding that plaintiff was an emergency employee.

It is the position of counsel for defendants, first, that Warren, under the evidence here, became a volunteer at the time of rendering assistance in extinguishing the fire, and, second, that he was an emergency employee under the provisions of the Workmen's Compensation Act, and in neither event was entitled to maintain this action. It may be said that a volunteer is one who does, or undertakes to do, something which he is not legally or morally obligated to do and the undertaking is not in pursuance or protection of his personal interests. The general rule respecting the liability of a master, under the evidence here, may be thus stated:

"One who voluntarily assumes to act as the servant of another cannot recover for personal injuries as a servant, although requested to act by a servant of the master, *but the rule is otherwise where the volunteer has an interest in the work.*" (Italics ours.) 56 C.J.S., p. 864, §177.

"One who, in furtherance of his own interests, assists the servants of another in the performance of their work is not a trespasser, because he is lawfully in his place; he is not a fellow servant with the other servants, because he is not directly or indirectly retained or employed by the master of such servants; he is not a mere volunteer, because he does the work to further his own interests or those of his master. Therefore the master of such other servants is liable to him for injuries received as a result of their neglect or misconduct, and the fellow-

servant rule is not applicable. This is true, even though the service is not wholly voluntary, but is induced by the request of a servant in the master's employ." 56 C.J.S., p. 1091, §328 b.

The evidence in the instant case must be entirely disregarded if it should be held that Warren is a volunteer, for there was competent evidence before the jury that his efforts in extinguishing the fire at the time of his injuries were in safeguarding and protecting, if not his own person, his own property, and it is a matter of common knowledge, and one of which this court will take judicial notice, that a fire within a few inches of a filled gasoline tank is a dangerous instrumentality, and if allowed to continue to burn, thereby causing an explosion, it will endanger the lives and property of those in the immediate vicinity, and that is the exact situation presented by the record in the instant case. We have no hesitancy in holding that Warren was not a volunteer.

It further is contended by defendants that at the time and place of the accident and plaintiff's resulting injuries, the evidence in the record conclusively establishes that Warren was an employee under the provisions of the Workmen's Compensation Act, and, therefore, could not maintain an action in tort against defendants. Under the provisions of section 288, chapter 97, '35 C. S.A., as amended by Session Laws of Colorado 1947, p. 632, and Session Laws of Colorado 1947, p. 638, and appearing unchanged in Session Laws of Colorado 1951, p. 541, "The term 'employee' shall mean and include: * * * (b) Every person in the service of any person, association of persons, firm, private corporation, * * * under any contract of hire, * * * but not including any persons * * * *whose employment is but casual and not in the usual course of trade, business, profession or occupation of his employer.*" (Italics ours.)

If, at the time of Warren's efforts to assist in extinguishing the fire and his injuries, his employment was casual "and not in the usual course of trade, business,

508

profession or occupation of his employer," then our Workmen's Compensation Act is inapplicable to the situation presented in this action. We have determined in numerous cases that in order to be excluded from the provisions of our Workmen's Compensation Act one's employment must be casual, and not in the usual course of trade, business, profession or occupation of his employer; both conditions must exist. *Lackey v. Industrial Commission,* 80 Colo. 112, 249 Pac. 662; *Hoshiko v. Industrial Commission,* 83 Colo. 556, 266 Pac. 1114; *Comerford v. Carr,* 86 Colo. 590, 284 Pac. 121; *Royal Indemnity Co. v. Industrial Commission,* 105 Colo. 25, 94 P. (2d) 697; *Kamp v. Disney,* 110 Colo. 518, 135 P. (2d) 1019; *Neely-Towner Motor Co. v. Industrial Commission,* 123 Colo. 472, 230 P. (2d) 993.

The word "casual" is the antonym of "regular." *Lackey v. Industrial Commission, supra.* Casual employment may be said to be that which is occasional, incidental, temporary, emergent or haphazard. An employment, therefore, is casual within the meaning and intent of our Workmen's Compensation Act when it is not regular, periodic or certain in nature. Under the evidence here considered and under every definition and judicial construction given the term "casual employment," Warren's employment in the present case was such. Casual employment alone does not exclude one from the provisions of our Workmen's Compensation Act. *Kamp v. Disney, supra.* To exclude one from the provisions of the Act, the employment must not only be casual, but also it must not be in the usual course of the business of the employer, and this necessitates our determination as to whether Warren, at the time of his injuries, was engaged in the usual course of business of the defendant company. The term "usual course of business" has not been judicially defined in any of our decisions although we have had numerous occasions to determine whether an employee, at the time of his injuries, was engaged in the usual course of business of his employer. *Lackey v. In-*

*dustrial Commission, supra; Industrial Commission v. Moynihan,* 94 Colo. 438, 32 P. (2d) 802; *Royal Indemnity Co. v. Industrial Commission, supra.* It may be said that one is employed "in the usual course of trade, business, profession or occupation of his employer" when he is engaged in work of the kind required in the business of the employer, and this work must be in conformity with the established scheme or system of the business. If it is work of the kind required in the employer's business and in conformity with his established scheme or system of doing business, then it is in the usual course thereof. The term "usual course of business" has reference to the normal operations constituting the regular business of the employer.

 If the Cudahy Company charged Heckman with the duty of delivering the truck and the load in Denver, and if it appears that an emergency existed which required assistance for Heckman to perform the duties with which he was charged, he then had implied authority to call on plaintiff to assist him, and the latter thereby became an emergency employee of the Company, which then assumed toward him the same obligation as it owed to any other of its employees in the same category; that is, to any employee whose employment was casual and not in its usual course of business. Such emergency employee is by statute excluded from the provisions of our Workmen's Compensation Act.

The trial court did not err in refusing to grant defendants' motion for a directed verdict or to set aside the same.

The principal error assigned to the giving of instructions is the court's omission therefrom of any reference to the Workmen's Compensation Act of Colorado and the relation of plaintiff thereto. What we already have announced disposes of these objections.

 Plaintiff, as we have said, offered evidence of his loss of earnings and profits during the period that he was obliged to remain inactive in his business because

of the injuries incurred. It is true that he did not produce books of account or otherwise establish by records the exact amount of his losses, but he did state the basis of the computation thereof. It is the contention of defendants' counsel that this evidence was incompetent; that no reasonable inference could be drawn therefrom as to the loss of business as a result of the injury; and therefore error was committed in denying defendants' motion to strike the same.

Plaintiff's evidence as to his business losses resulting from his inability to attend thereto, although concededly an approximation thereof, was competent evidence to aid the jury in estimating a fair and just compensation for losses occasioned by the injury. *Colorado National Bank v. Ashcraft,* 83 Colo. 136, 263 Pac. 23; *Mountain States T. & T. Co. v. Sanger,* 87 Colo. 369, 287 Pac. 866; *Trujillo v. Wilson,* 117 Colo. 430, 189 P. (2d) 147; 122 A.L.R., 308; 12 A.L.R. (2d) 288.

It should be remembered that plaintiff, in his complaint, set forth two causes of action. The verdict was general, not specifying upon which cause of action the same was based. If, under either cause of action, the jury found that plaintiff's injuries resulted from the carelessness and negligence of defendant employee and that carelessness and negligence was the proximate cause thereof, there was competent evidence before it to support that verdict.

 We hold that under the evidence as disclosed by the record, plaintiff was not an employee under the terms of the Workmen's Compensation Act of Colorado, but an emergency employee entitled to maintain an action against defendants for any injuries which he sustained resulting from the carelessness and negligence of defendants. No error was committed by the trial court in denying defendants' motions for a directed verdict and to dismiss the action.

There was competent evidence before the jury from which it might determine the questions of damages,

proximate cause, negligence and contributory negligence, and no error was committed by the court in giving to it any of the instructions to which defendant interposed objections.

We have examined and considered other points upon which defendants rely for a reversal and find no prejudicial error resulting from the trial court's rulings thereon.

The judgment is affirmed.

MR. CHIEF JUSTICE JACKSON does not participate.