**Debbie Jo PRINGLE, Petitioner**

v.

**Mark VALDEZ, Respondent.**

No. 06SC92.

Supreme Court of Colorado,
En Banc.

Nov. 26, 2007.

Wheeler Trigg Kennedy LLP, John M. Vaught, Terence M. Ridley, Andrew M. Unthank, Denver, Colorado, Attorneys for Petitioner.

Roberts Levin & Patterson, P.C., Bradley A. Levin, Jeremy A. Sitcoff, Denver, Colorado, Caplis & Deasy, LLC, Daniel J. Caplis, Denver, Colorado Attorneys for Respondent.

Sears & Swanson, P.C., Victoria C. Swanson, Colorado Springs, Colorado, Attorneys

for Amicus Curiae Colorado Trial Lawyers Association.

Snell & Willmer L.L.P., Lee A. Mickus, Cedar R. Holmgren, Denver, Colorado, Attorneys for Amicus Curiae Colorado Civil Justice League.

## JUDGMENT AFFIRMED IN PART AND REVERSED IN PART

Justice BENDER delivered the Opinion of the Court.

### I. Introduction

We granted certiorari in *Valdez v. Pringle,* 143 P.3d 1069 (Colo.App.2005), to determine whether the court of appeals correctly affirmed a jury's damages award in this automobile accident case.[1] The jury found that Petitioner Debbie Jo Pringle, the defendant in the trial court, was at fault in causing the accident, and awarded Respondent Mark Valdez, the plaintiff in the trial court, $400,000 for physical impairment and disfigurement damages and $100,000 for noneconomic damages.

Because Valdez admitted he was not wearing a seatbelt, Pringle requested a jury instruction based on section 42–4–237(7), C.R.S. (2007) (the seatbelt defense provision), which permits a jury to consider violation of the mandatory seatbelt law to mitigate damages for pain and suffering.[2] The mandatory seatbelt law requires most drivers and front-seat passengers to wear a seatbelt. Valdez did not claim damages for pain and suffering but only for inconvenience, emotional stress, and impairment of the quality of life. The trial court refused to instruct according to the seatbelt defense provision, ruling that this statute provided for the plaintiff to miti-gate damages only for a claim of pain and suffering damages, but not other noneconomic damages as claimed by Valdez. Because evidence of Valdez's failure to wear a seatbelt was introduced at trial, the trial court gave a specific instruction that the jury was not to consider his failure to wear a seatbelt in calculating damages.

On appeal, the court of appeals affirmed the trial court's refusal to instruct on the seatbelt defense provision and affirmed the damages award to Valdez of $100,000 for noneconomic loss consisting of inconvenience, emotional stress, and impairment of the quality of life. That court held that the phrase "pain and suffering" as it is used in the seatbelt defense provision refers only to a limited subset of noneconomic damages bearing that label.

Our review of the statutory language, our case law in slightly different contexts, and various treatises discussing damages leads us to conclude that the court of appeals erred by its statutory construction. We hold that the General Assembly intended "pain and suffering" as used in this statute to encompass all noneconomic damages, which includes damages for inconvenience, emotional stress, and impairment of the quality of life. In addition, contrary to Pringle's claims, we hold that "pain and suffering" as used in the seatbelt defense provision does not include damages for physical impairment and disfigurement. Rather, such damages are a category separate and distinct from other noneconomic damages and thus are not subject to mitigation under the seatbelt defense provision.

Thus, we reverse the court of appeals' decision as to the $100,000 award for noneco-

---

1. We granted certiorari on the following issue: Whether the court of appeals erred as a matter of law in reading section 42–4–237(7), C.R.S. (2005), to limit only "pain and suffering" damages, rather than all non-economic damages presumptively caused by a plaintiff's failure to wear a seatbelt.

2. Section 42–4–237(7) provides: Evidence of failure to comply with the [seatbelt] requirement of subsection (2) of this section shall be admissible to mitigate damages with respect to any person who was involved in a motor vehicle accident and who seeks in any subsequent litigation to recover damages for injuries resulting from the accident. Such mitigation shall be limited to awards for pain and suffering and shall not be used for limiting recovery of economic loss and medical payments.

We note that the statute does not technically create a defense. However, previous cases from this court and the court of appeals refer to this provision colloquially as "the seatbelt defense." To avoid confusion, we will continue to refer to section 42–4–237(7) as the seatbelt defense provision.

nomic damages and affirm the $400,000 award for physical impairment and disfigurement damages. We remand the case to the court of appeals to be returned to the trial court for proceedings consistent with this opinion.

## II. Facts and Proceedings Below

Mark Valdez was riding in the front passenger's seat of a vehicle driven by Debbie Jo Pringle. Pringle was driving Valdez home after leaving a bar with a group of friends. Shortly after leaving the bar, Pringle drove the car into a concrete barrier. Valdez, who was not wearing a seatbelt, was thrown into the windshield. His head penetrated the windshield and he sustained injuries to his face, including multiple lacerations, abrasions, and nerve damage. The lacerations required surgical repair after the accident, and he had a further surgery for scar revision six months later.

Valdez now has permanent scars on his face, including across the hairline, over the bridge of his nose, on his ear, on his forehead, and from his lip across his cheek toward his ear. He also has permanent nerve damage causing pain in his face, and loss of sensation in the areas of the scars.

Valdez brought this action against Pringle alleging negligence. At trial, he requested damages for impairment and disfigurement, and noneconomic losses including inconvenience, emotional stress, and impairment of quality of life. He initially requested damages for pain and suffering, but dropped this element of his damages claim because section 42–4–237(7), the seatbelt defense provision, provides for mitigation of pain and suffering damages for a plaintiff who was not wearing a seatbelt at the time of an auto accident, in violation of the mandatory seatbelt law.

Pringle argued that the jury should have been instructed on the seatbelt defense, because the term "pain and suffering" in that section of the statute encompasses all forms of noneconomic damages. However, because Valdez did not request pain and suffering damages, the trial court rejected Pringle's tendered instruction on the seatbelt defense. The court concluded that if the General Assembly had intended the seatbelt defense to

apply to noneconomic damages other than pain and suffering, it would have clearly stated so. Because there was evidence that Valdez was not wearing his seatbelt at the time of the accident, the trial court instructed the jury not to consider Valdez's failure to wear his seatbelt when determining his damages for physical impairment and disfigurement, inconvenience, emotional stress, and impairment of the quality of life.

The jury returned a verdict in Valdez's favor awarding him $400,000 for physical impairment and disfigurement and $100,000 for his noneconomic losses.

Pringle appealed to the court of appeals, claiming, among other things, that the trial court improperly failed to give the seatbelt defense instruction, which would have permitted Valdez's noneconomic damages to be subject to mitigation.

The court of appeals held that the phrase "pain and suffering" in the seatbelt defense provision does not encompass all forms of noneconomic damages; rather, it denotes a subcategory of noneconomic damages. Because the seatbelt defense provision does not define "pain and suffering," the court looked to other statutes for a definition and reasoned that section 13–21–102.5(2)(b), C.R.S. (2005), which defines noneconomic loss in the general damages cap statute applicable to civil actions, should apply. That section does not define "pain and suffering," but includes it in a list of types of noneconomic loss:

> "Noneconomic loss or injury" means nonpecuniary harm for which damages are recoverable by the person suffering the direct or primary loss or injury, including pain and suffering, inconvenience, emotional stress, and impairment of the quality of life.

§ 13–21–102.5(2)(b). The court reasoned that the word "including" in the general damages cap statute meant that the items in the list were secondary or subordinate to noneconomic loss, not synonymous with noneconomic loss. Thus, the court concluded that the General Assembly intended to categorize pain and suffering as a subcategory of noneconomic loss, not as a synonym for it. The court also concluded that because both the

general damages cap statute and the seatbelt defense provision apply to the same lawsuit, the General Assembly would not have intended "pain and suffering" to mean different things in the two statutes. Thus, the court determined that the meaning of "pain and suffering" in the general damages cap statute controls the meaning in the seatbelt defense statute.

Lastly, the court of appeals stated that the language of the general damages cap statute indicates that the General Assembly was aware of the distinction between pain and suffering and noneconomic damages. Because the seatbelt defense provision, which was enacted later than the general damages cap statute, specifies pain and suffering alone as the type of damages to which it applies, the court concluded that it must be read to exclude all other types of damages not specified.

Hence, the court of appeals held that the seatbelt defense provision applies only to pain and suffering, and not to other kinds of noneconomic damages such as those claimed by Valdez. Thus, the court of appeals affirmed the trial court when it instructed the jury not to consider Valdez's failure to wear a seatbelt in relation to his claims for noneconomic damages other than pain and suffering.

Pringle petitioned this court for certiorari review. She argues that the phrase "pain and suffering" in section 42–4–237(7) encompasses all forms of noneconomic damages, including those sought by Valdez. She also argues that the jury should have been instructed that it could mitigate Valdez's claimed damages not only for his noneconomic damages, but also for his physical impairment and disfigurement damages, based on his failure to wear a seatbelt.

## III. Analysis

This case requires that we construe the phrase "pain and suffering" in Colorado's mandatory seatbelt law, section 42–4–237, which provides for mitigation of damages when a plaintiff in a automobile accident fails to use a seatbelt in violation of the statute.

Before considering the substantive issues raised in this case, we summarize briefly the principles that guide our analysis. We review the proper construction of statutes de novo. *Mishkin v. Young*, 107 P.3d 393, 396 (Colo.2005). When we construe statutory provisions, we interpret them in a way that gives effect to the intent of the General Assembly. *Carlson v. Ferris*, 85 P.3d 504, 507 (Colo.2003). If the legislative intent is communicated by the commonly understood and accepted language of the statute, we look no further. *Gorman v. Tucker*, 961 P.2d 1126, 1128 (Colo.1998). However, if the language of the statute is ambiguous, then we look to principles of statutory construction to ascertain the legislative intent. *Id.* If our conclusion does not comport with the General Assembly's intention, it is the legislature, and not the court, that must rewrite it. *Preston v. Dupont*, 35 P.3d 433, 441 (Colo.2001). With these principles in mind, we summarize the history of the seatbelt defense in Colorado and then turn to the arguments raised by the parties.

At common law, most states did not allow evidence of failure to wear a seatbelt to limit the liability of a defendant or the damages available to a plaintiff in an automobile accident. Tori R. Kricken, *The Viability of the Seatbelt Defense in Wyoming: Implications of and Issues Surrounding Wyoming Statute § 31–5–1402(F)*, 5 Wyo. L.Rev. 133, 135 (2005). As the efficacy of seatbelts in preventing serious injury and death became apparent, federal and state laws were enacted to mandate seatbelt installation in new automobiles. Brian T. Bagley, Comment, *The Seatbelt Defense in Texas*, 35 St. Mary's L.J. 707, 716–17 (2004). As seatbelts became widely available, courts and legislatures struggled with the question of whether a plaintiff who failed to take advantage of an available seatbelt ought to bear some of the consequences for damages that resulted. Proponents of the so-called "seatbelt defense" argued that plaintiffs who contributed to their own injuries by their failure to wear a seatbelt should be subject to comparative or contributory negligence, or to mitigation of damages caused by the failure to buckle up.

This court has prohibited the use of evidence of failure to wear a seatbelt in an automobile accident. Such evidence cannot be used to demonstrate a plaintiff's contributory or comparative negligence. *Fischer v. Moore,* 183 Colo. 392, 395, 517 P.2d 458, 459 (1973) (holding that failure to wear a seatbelt is not evidence of contributory negligence); *Churning v. Staples,* 628 P.2d 180, 181 (Colo. App.1981) (adopting the reasoning in *Fischer v. Moore* to hold that failure to wear a seatbelt is not evidence of comparative negligence); *see also Dare v. Sobule,* 674 P.2d 960, 963 (Colo.1984) (holding that evidence of failure to wear a motorcycle helmet is inadmissible to show comparative negligence, and approving of *Churning v. Staples* ).

In 1987, the General Assembly enacted a law mandating seatbelt use for drivers and front-seat passengers:

> Unless exempted ... every driver of and every front seat passenger in a motor vehicle equipped with a safety belt system shall wear a fastened safety belt while the motor vehicle is being operated on a street or highway in this state.

§ 42–4–237(2). In addition to requiring seatbelt use, this law created Colorado's own version of the seatbelt defense by providing that failure of a front-seat occupant to use a seatbelt may mitigate damages for pain and suffering:

> Evidence of failure to comply with the [seatbelt] requirement of subsection (2) of this section shall be admissible to mitigate damages with respect to any person who was involved in a motor vehicle accident and who seeks in any subsequent litigation to recover damages for injuries resulting from the accident. Such mitigation shall be limited to awards for *pain and suffering* and shall not be used for limiting recovery of economic loss and medical payments.

§ 42–4–237(7) (emphasis added).

The trial court and court of appeals both determined that "pain and suffering" in this statute refers to a specific subcategory of noneconomic damages, and therefore does not permit mitigation for other types of noneconomic damages, such as the damages Valdez claimed for inconvenience, emotional stress, or impairment of quality of life. Valdez urges us to adopt this position.

Pringle advances two primary arguments to support her contention that "pain and suffering" should be read more broadly to encompass all forms of noneconomic loss. First, she argues that the plain meaning of "pain and suffering" includes all forms of noneconomic damages. Second, she argues that even if the language is ambiguous, principles of statutory construction indicate that the General Assembly intended the phrase to include all noneconomic damages.

### A. "Pain and Suffering" in Section 42–4–237(7) Encompasses All Forms of Noneconomic Loss or Injury

■ Our analysis of the statutory language leads us to conclude that the General Assembly intended "pain and suffering" in this statute to have a broad meaning, encompassing a broader range of noneconomic damages than those that an attorney may tactically label as "pain and suffering." This analysis finds support in our case law and in the case law of other jurisdictions. A review of legal dictionaries and treatises also reveals that "pain and suffering" is commonly understood to encompass all noneconomic damages. We lastly note that a broad construction effectuates the legislative purpose of encouraging front-seat occupants to wear seatbelts and penalizing those who do not.

■ Examination of the phrasing of this statute and the context in which the phrase "pain and suffering" is used suggests that the General Assembly intended it to encompass all forms of noneconomic damages.[3] The statute juxtaposes the term "pain and suffering" with the general category of "economic loss": "Such mitigation shall be limited to awards for *pain and suffering* and shall not be used for limiting recovery of *economic loss* and medical payments." § 42–4–237(7) (emphasis added). This sentence structure suggests that the General Assembly intended to distinguish between economic loss and

---

**3.** As we explain below, damages for physical impairment and disfigurement are a separate category of damages and are not included in the meaning of noneconomic damages.

noneconomic loss, not between economic loss and a subcategory of noneconomic loss. There would be little reason for the General Assembly to carve out an express exception for economic damages if the scope of mitigation was limited to some, but not all, noneconomic damages. The more harmonious reading of the statute is to distinguish between all economic damages and all noneconomic damages. *See Brooke v. Rest. Serv., Inc.,* 906 P.2d 66, 70 (Colo.1995) (holding that a statute "should be construed to give consistent, harmonious, and sensible effect to all of its parts").

This broad interpretation of pain and suffering also finds support in our case law. In our precedent involving similar concepts in other contexts, we have given a broad interpretation to various descriptions of noneconomic damages. For example, in *Giampapa v. American Family Mutual Insurance Co.,* 64 P.3d 230, 241–42 (Colo.2003), when we construed the scope of noneconomic damages available for willful and wanton breach of contract, we held that the phrase "mental anguish" includes a variety of noneconomic damages, including mental distress, mental suffering, humiliation, embarrassment, and emotional distress. We concluded that one phrase often serves as an abbreviation or proxy for a range of noneconomic damages. *Id.* Because of this, we concluded that when determining an award for noneconomic damages, "we simply find no principled method of separating 'mental suffering' and 'emotional distress' damages from those damages incurred by 'physical pain' or 'physical stress,' because 'mental anguish' is commonly evidenced by physical manifestations of that same anguish." *Id.* at 242. We approved of a similarly broad interpretation of noneconomic damages in *Trimble v. City & County of Denver,* 697 P.2d 716, 730 (Colo.1985), when we noted that the trial court properly equated "loss of ability to enjoy life" with "mental suffering" when awarding damages

for fraudulent inducement and intentional interference with contractual relations.

Other courts have also given a broad interpretation to the phrase "pain and suffering," ruling that it encompasses a range of noneconomic damages. For example, in Georgia, "pain and suffering is a generic name for several types of damages falling under that head." *Childs v. United States,* 923 F.Supp. 1570, 1586 (S.D.Ga.1996). The Supreme Court of Utah held that "pain and suffering" includes "not only physical pain but also mental pain or anguish.... Included in mental pain and suffering is the diminished enjoyment of life, as well as the humiliation and embarrassment resulting from permanent scars and disability." *Judd v. Rowley's Cherry Hill Orchards, Inc.,* 611 P.2d 1216, 1221 (Utah 1980). Nebraska has established that "the loss of enjoyment of life is not a separate category of damages but is an element or component of pain and suffering." *Anderson v. Neb. Dep't of Soc. Servs.,* 248 Neb. 651, 538 N.W.2d 732, 740 (1995) (noting that a majority of the courts that have considered this issue have agreed).

Legal dictionaries and treatises indicate that "pain and suffering" is commonly understood to have a broad meaning. For example, one treatise notes that "the unitary concept of 'pain and suffering' has served as a convenient label under which a plaintiff may recover not only for physical pain but for fright, nervousness, grief, anxiety, worry, mortification, shock, humiliation, indignity, embarrassment, apprehension, terror, or ordeal." 2 Jacob A. Stein, *Stein on Personal Injury Damages* § 8:2 (3d ed.2006).[4]

Lastly, we note that this construction of the statute promotes the General Assembly's purpose in passing the seatbelt statute, which was to encourage front-seat occupants to wear seatbelts and penalize those who do not. *See Carlson,* 85 P.3d at 511 (noting that the General Assembly's intent in passing the seatbelt statute was to promote seatbelt use by providing penalties

---

4. *See also Black's Law Dictionary* 1134 (7th ed.1999) (defining "pain and suffering" as "physical discomfort or emotional distress compensable as an element of damages in torts"); 2 Dan B. Dobbs, *The Law of Remedies: Damages, Equity, Restitution* § 8.1(4), 383–84 (2d ed.1993) (describing "pain and suffering" as "the sensation of physical pain itself, and the inconvenience, pain and sense of loss that may be built on physical injury," as well as "mental or emotional anguish or distress resulting from injury").

for nonuse); *Anderson v. Watson*, 953 P.2d 1284, 1290 (Colo.1998) (concluding that the General Assembly intended to "sen[d] a signal to drivers and front-seat passengers" by decreasing pain and suffering damages for injuries attributable to seatbelt nonuse). A narrow construction of the phrase "pain and suffering" would allow a party to avoid mitigation under the seatbelt defense simply by omitting the words "pain and suffering," and thereby obtain an unmitigated damages award for closely related or identical damages. On the other hand, a broad construction ensures that the seatbelt defense provision fulfills the legislature's purpose to encourage the mandatory use of seatbelts and cannot be nullified through artful pleading. *See Indus. Claim Appeals Office v. Orth*, 965 P.2d 1246, 1254 (Colo. 1998) (noting that the court avoids interpretations that render any portion of the statute a nullity).

Given all these considerations, we construe the seatbelt defense provision broadly and therefore conclude that it is unnecessary to resort to other methods of statutory interpretation as did the court of appeals. Thus, we need not search other statutory provisions to discern the meaning of the phrase.[5]

In sum, we hold that the noneconomic damages in the amount of $100,000 awarded to Valdez for inconvenience, emotional stress, and impairment of the quality of life are included in the meaning of "pain and suffering" under the seatbelt defense provision. Thus, the jury should have been instructed that it was required to consider Valdez's

failure to use a seatbelt to mitigate, or reduce, these allegations of damages.[6]

**B. Physical Impairment and Disfigurement Damages Are Not Encompassed Within the Scope of "Pain and Suffering"**

■ Next, we address Pringle's claim that the jury should have been instructed that it must consider Valdez's failure to wear a seatbelt to mitigate all of the damages he requested, including those he claimed for physical impairment and disfigurement. Pringle points out that pain and suffering is synonymous with noneconomic loss and concludes that because damages for physical impairment and disfigurement are not economic damages, they must be an element of noneconomic loss. She argues that physical impairment and disfigurement damages are included in the meaning of "pain and suffering." She also argues that a person who undergoes physical impairment and disfigurement must necessarily also experience pain and suffering.

■ As an initial matter, we note that Pringle conceded this point in a trial brief and argues this point for the first time before this court.[7] Normally, we consider an argument waived if it is not made to the trial court. *See, e.g., Paine, Webber, Jackson & Curtis, Inc. v. Adams*, 718 P.2d 508, 513 (Colo.1986) ("As a general rule, issues not presented in the trial court are deemed waived and cannot be raised on appeal."). However, we address this issue to clarify our construction of the phrase "pain and suffering" in the seatbelt defense provision.

5. The court of appeals' decision relied heavily on the definition of "noneconomic loss or injury" in the general damages cap statute:
   "Noneconomic loss or injury" means nonpecuniary harm for which damages are recoverable by the person suffering the direct or primary loss or injury, including pain and suffering, inconvenience, emotional stress, and impairment of the quality of life.
   § 13–21–102.5(2)(b).

6. The relevant instruction is:
   If you find the defendant has proved by a preponderance of the evidence that the plaintiff was not wearing an available safety belt, then you must determine the amount of pain and suffering damages, if any, caused by the plaintiff's failure to use a safety belt. If you

award noneconomic damages for pain and suffering, this amount must be deducted from that award.
   CJI–Civ. 4th 5:2A (titled "Affirmative Defense—Nonuse of Safety Belt").

7. In Defendant's Response to Plaintiff's Trial Brief Re: Seat Belt Defense at 1 n. 1, Pringle made this admission: "Plaintiff also argues his failure to mitigate damages cannot diminish his claims for physical impairment and disfigurement. Defendant does not contest this position." Before the court of appeals, Pringle only argued that the $400,000 award for physical impairment or disfigurement was grossly excessive, not that it should have been subject to mitigation.

Under Colorado common law, damages for physical impairment and disfigurement have historically been recognized as a separate element of damages. *Preston*, 35 P.3d at 441. In *Preston* we concluded that "physical impairment and disfigurement damages are often the most serious and damaging consequences of a defendant's negligence or misconduct." *Id.* Thus, we noted that a separate category for physical impairment and disfigurement damages is a necessary and important element in making an injured plaintiff whole:

> If someone tortiously inflicts a permanent injury on another he or she has taken away something valuable which is independent and different from other recognized elements of damages such as pain and suffering and loss of earning capacity. For this invasion the plaintiff should be awarded a separate sum in addition to the compensation for the other elements and such recovery should be proportional to the severity of the injury.

35 P.3d at 441 (quoting 2 Marilyn Minzer et al., *Damages in Tort Actions* § 12.02 (1992)).

The principle that a victim is entitled "to have a sound body and mind throughout his or her life" provides the rationale for this distinction. Minzer et al., *supra.* Physical impairment and disfigurement constitute a permanent injury irrespective of any pain or inconvenience. The tortfeasor caused the victim to have a permanent injury that she did not have before. *See Thompson v. Nat'l R.R. Passenger Corp.*, 621 F.2d 814, 824 (6th Cir.1980) ("Permanent impairment compensates the victim for the fact of being permanently injured whether or not it causes any pain or inconvenience; pain and suffering compensates the victim for the physical and mental discomfort caused by the injury.").

Pringle argues that the holding in *Preston* that physical impairment and disfigurement constitutes a separate category of damages is no longer valid because *Preston* was legislatively overruled by the General Assembly. While the General Assembly amended the Health Care Availability Act (HCAA) in response to our holding in *Preston* by redefining noneconomic damages under the HCAA,

we disagree that the distinction between noneconomic damages and physical impairment and disfigurement damages was effectively overruled.

In *Preston*, we construed the cap on damages in the HCAA, section 13–64–302, C.R.S. (2001). 35 P.3d at 434. Two years later, the General Assembly amended the HCAA to reverse *Preston's* holding that physical impairment or disfigurement damages were not included as noneconomic damages. This amendment to the HCAA effectively altered our statutory interpretation for future cases by including physical impairment and disfigurement damages among those claims subject to the HCAA's noneconomic damages cap. § 13–64–302, C.R.S. (2007).' This amendment impacts only suits brought pursuant to the HCAA, not the seatbelt defense provision. Our analysis of the common law and principles underlying our discussion in *Preston* that physical impairment and disfigurement constitute a separate category of damages from noneconomic damages stands. The text of the seatbelt defense provision does not expressly mention physical impairment and disfigurement damages. Hence, we presume that this statute does not alter the common law on this issue. *See Preston*, 35 P.3d at 440 (holding that a statute is not presumed to alter the common law except to the extent the statute expressly provides).

We therefore hold that an award for physical disfigurement and impairment is not subject to mitigation under the seatbelt defense provision, and we affirm the $400,000 awarded to Valdez for physical impairment and disfigurement.

### IV. Conclusion

For the reasons stated, we hold that the noneconomic damages of $100,000 awarded to Valdez for inconvenience, emotional stress, and impairment of the quality of life are included in the meaning of "pain and suffering" under the seatbelt defense provision. Thus, the jury should have been instructed that it was required to consider Valdez's failure to use a seatbelt to mitigate, or reduce, these allegations of damages. We also hold that an award for physical disfigurement and impairment is not subject to miti-

gation under the seatbelt defense provision, and we affirm the $400,000 awarded to Valdez for physical impairment and disfigurement.

Justice COATS concurs in part and dissents in part, Justice EID joins in the concurrence and dissent.

Justice COATS, concurring in part and dissenting in part.

Largely because I agree so completely with the first part of the majority's analysis, I feel compelled to dissent from the second. For precisely the reasons offered by the majority in concluding that the legislature used the term "pain and suffering" broadly to include all noneconomic damages, I think it also necessarily includes noneconomic damages resulting from physical impairment or disfigurement. I am unpersuaded by the majority's historical rationale for disparate treatment, not least because I am convinced that it misreads the pertinent authorities.

In *Preston v. Dupont,* this court refused to apply the legislature's cap on noneconomic damages in medical malpractice actions to damages resulting from physical impairment and disfigurement. 35 P.3d 433 (Colo.2001). Based on its understanding of a related statute dealing with damages for noneconomic loss or injury generally, the *Preston* court discovered a legislative intent to allow a separate, and unlimited, award for physical impairment and disfigurement. *See id.* at 439 (construing section 13–21–102.5(5), C.R.S. (2001) ); *see also id.* at 442–43 (Coats, J., dissenting). The general assembly immediately rejected this construction by expressly amending the HCAA to include damages for physical impairment and disfigurement in

medical malpractice actions within the definition of direct noneconomic loss or injury. *See* Ch. 271, sec. 1, § 13–21–102.5, 2003 Colo. Sess. Laws 1787. As peripheral support for its construction, however, the *Preston* court asserted that under the Colorado common law, damages for physical impairment and disfigurement had historically been recognized as a separate element of damages; and it is that assertion from *Preston* upon which the majority entirely rests its physical impairment and disfigurement holding today.

While it is unclear to me why such pre-statutory usage, even if it actually existed, would be sufficient to override the legislature's treatment of noneconomic damages in its seatbelt law, in fact neither the authority relied on by the majority, nor any other of which I am aware, supports the assertion that physical impairment and disfigurement were distinguished from other causes of pain and suffering or were somehow categorized as something other than noneconomic damages at common law. The authorities relied on in *Preston* contain nothing more than brief references to permanent physical impairment or disfigurement among other injuries supporting particular damage awards or as a type of injury meriting special jury instruction.[1] Nothing in the pre-statutory law of this jurisdiction suggests a variance from the generally accepted treatment of physical impairment and disfigurement as types of noneconomic loss for which recovery might be had in a tort action. *See generally* 1 Marilyn Minzer et al., *Damages in Tort Actions* § 3.42 (1992) ("Several statutes provide excellent descriptions of types of noneconomic loss which might arise in a tort action. Physical impairment, disfigurement and disability are recognized losses. The

---

1. *See, e.g., Barter Mach. & Supply Co. v. Muchow,* 169 Colo. 100, 102–103, 453 P.2d 804, 805 (1969) (discussing permanent injury and pain and suffering together); *Celebrities Bowling, Inc. v. Shattuck,* 160 Colo. 102, 107–108, 414 P.2d 657, 659–60 (1966) (court considered the injury and the admission of a mortality table for purpose of computing damages); *Heckman v. Warren,* 124 Colo. 497, 500, 238 P.2d 854, 856 (1951) (court made no distinction between permanent injuries and noneconomic damages); *Denver Tramway Corp. v. Gentry,* 82 Colo. 51, 58, 256 P. 1088, 1091 (1927) (court considered physical suffering, impairment, and medical expenses togeth-

er); *Rodriguez v. Denver & Rio Grande W. R.R. Co.,* 32 Colo.App. 378, 381–82, 512 P.2d 652, 654 (1973) (court considered pain and suffering, permanent injuries, and earning capacity together); *Rein v. Jarvis,* 131 Colo. 377, 381, 281 P.2d 1019, 1020 (1955) (issue of whether damages award was excessive turned on future suffering and discomfort from disfigurement); *King v. Avila,* 127 Colo. 538, 540, 259 P.2d 268, 269 (1953) (court affirmed damage award and considered permanency of injuries, life expectancy, pain and suffering, and reduced wages); *Knaus v. Yoder,* 98 Colo. 1, 4, 52 P.2d 1152, 1153 (1935) (disfigurement properly included in jury award).

loss of mental or physical well-being, health, and function, as well as fear of injury, loss, or illness, are elements of noneconomic damages.").

The practice of awarding physical impairment and disfigurement damages in a tertiary jury finding, alongside separate findings for economic and noneconomic damages, first arose after the 1986 addition of section 13–21–102.5 to the statutory scheme. *See* Ch. 107, sec. 1, § 13–21–102.5, 1986 Colo. Sess. Laws 677. As the result of what appears to be a misguided attempt to ensure that economic loss associated with permanent physical impairment or disfigurement not be mistakenly included in, and limited along with, noneconomic damages, *see* § 13–21–102.5(5), the court of appeals found it necessary for juries to report their award of damages for physical impairment and disfigurement in a separate finding. *See Cooley v. Paraho Dev. Corp.*, 851 P.2d 207 (Colo.App.1992); *Herrera v. Gene's Towing*, 827 P.2d 619 (Colo. App.1992); *Hoffman v. Schafer*, 815 P.2d 971 (Colo.App.1991), *aff'd on other grounds*, 831 P.2d 897 (Colo.1992). Whether legislatively intended or not, this mechanical segregation of jury findings was clearly dictated (if at all) by the addition of subsection 102.5(5) rather than any supposed distinction between physical impairment or disfigurement and other noneconomic losses at common law.

The seatbelt provision at issue here does not purport to cap damages of any kind; it is a statutorily-created rule, establishing the relevance and admissibility of evidence of non-compliance with the seatbelt requirement for the determination of other-than-economic damages. More like a comparative negligence provision, it permits the jury to apportion the responsibility for noneconomic loss between unbelted injured parties and their tort-feasors. Even the majority does not suggest that the mechanics of reporting jury findings, necessitated by the damage cap in section 13–21–102.5, in any way affects the construction of the seatbelt law.

To my mind, the fact that noneconomic loss from physical impairment or disfigurement was already a recognized source of recovery in this jurisdiction for tortious conduct makes it more rather than less likely that the legislature intended that it be treated the same as all other noneconomic loss. I am therefore unable to find any logical or principled basis for concluding that the impact of failing to wear a seatbelt is any less relevant to the mitigation of physical impairment or disfigurement damages than it is to any other noneconomic damages.

Because I believe the majority's disparate treatment of physical impairment and disfigurement damages is supported only by its assessment that they constitute such "a necessary and important element in making an injured plaintiff whole" that they should not be limited at all, and because I consider that determination to be strictly a matter for the general assembly, I respectfully dissent from that portion of the majority opinion.