2013 CO 38

Gary LARRIEU, Plaintiff–Appellant:

v.

BEST BUY STORES, L.P.,
Defendant–Appellee

Supreme Court Case No. 12SA213

Supreme Court of Colorado.

June 24, 2013

United States Court of Appeals for the Tenth Circuit, Appeal No. 11–1387

Attorneys for Plaintiff–Appellant: Taussig, Scipione, & Taussig, P.C., Deborah L. Taussig, John G. Taussig, Boulder, Colorado

Attorneys for Defendant–Appellee: Montgomery, Kolodny, Amatuzio & Dusbabek, LLP Lori K. Bell, Krista Maher, Denver, Colorado

JUSTICE HOBBS delivered the Opinion of the Court.

¶ 1 We accepted jurisdiction in this case pursuant to C.A.R. 21.1, certification of a question of state law. The United States Court of Appeals for the Tenth Circuit certified the following question to us:

Does Colorado's Premises Liability Act (Colo. Rev. Stat. § 13–21–115) apply to injuries caused by a defendant–landowner's employee during an activity not directly or inherently related to the land?

*Larrieu v. Best Buy Stores, L.P.*, 491 Fed. Appx. 864, 869 (10th Cir.2012).

¶ 2 Colorado's premises liability statute predicates a cause of action for landowner liability on injury that occurs to a person while on the landowner's property and as a result of the condition of the property or of activities conducted or circumstances existing on the property:

In *any civil action* brought against a landowner by a person who alleges injury occurring while on the real property of another and by reason of *the condition of such property, or activities conducted or circumstances existing on such property,* the landowner shall be liable *only* as provided in subsection (3) of this section.

§ 13–21–115(2), C.R.S. (2012) (emphasis added).

¶ 3 In making its certification, the circuit court stated that its "statement of this question is not meant to limit the Colorado Supreme Court's scope of inquiry and we invite the court to reformulate the question presented in any way it finds helpful." *Larrieu,* 491 Fed.'Appx. at 869. Upon considering the certified record and the briefs and oral arguments of the parties, we reformulate the question as follows:

Whether Colorado's premises liability statute, § 13–21–115, C.R.S. (2012), applies as a matter of law only to those activities and circumstances that are directly or inherently related to the land?

¶ 4 To this question, we answer "no." As we have reformulated it, the certified question requires us to interpret the statute and to determine the meaning of the phrase "activities conducted or circumstances existing on such property." Contrary to Best Buy's argument, we hold that Colorado's premises liability statute is not, as a matter of law, restricted solely to activities and circumstances that are directly or inherently related to the land. That restriction does not appear in the statutory language, and we do not adopt it now. But we also reject Larrieu's position, which would read the statute far too broadly, extending its application to any tort that happens to occur on another's property. Instead, we hold that the premises liability statute applies to conditions, activities, and circumstances on the property that the landowner is liable for in its legal capacity as a landowner. *See* § 13–21–115(1), (2); *Pierson v. Black Canyon Aggregates, Inc.,* 48 P.3d 1215, 1221 (Colo.2002). This analysis necessitates a fact-specific, case-by-case inquiry into whether: (a) the plaintiff's alleged injury occurred while on the landowner's real property; and (b) the alleged injury occurred by reason of the property's condition or as a result of activities conducted or circumstances existing on the property.

¶ 5 In enacting the premises liability statute, the General Assembly sought both "to protect landowners from liability in some circumstances when they were not protected at common law and to define the instances when liability will be imposed in the manner most consistent with the policies" set forth in the statute. § 13–21–115(1.5)(e). Because it is impossible to delineate every type of incident that might trigger landowner liability under the statute, whether the plaintiff's alleged injury occurred by reason of activities conducted or circumstance existing on the property depends on the specific facts alleged by the plaintiff in a given case. To defeat a claim brought under the statute, the defendant "landowner" may rebut these al-

leged facts in the same way it may rebut alleged facts concerning whether the plaintiff's alleged injury occurred on the defendant "landowner's" property.

¶ 6 This is not to say that such determinations must always be left for the trier of fact. As in all cases, summary judgment is appropriate where the trial court determines that there is no genuine dispute as to any material fact and that the party moving for summary judgment is entitled to judgment as a matter of law.

## I. Undisputed Facts and Prior Proceedings

¶ 7 According to the Tenth Circuit's certification, the following facts of this case are undisputed: On October 21, 2008, Gary Larrieu and his daughter arrived at a Best Buy warehouse in Aurora, Colorado, to pick up a freezer he purchased the previous day in a Best Buy retail store. Larrieu brought a truck with an attached trailer that would allow him to transport the freezer in an upright position. Together, Larrieu and a Best Buy employee, Stanley Monroe, removed the trailer's tailgate, which was too heavy for one person to lift alone. As Larrieu walked backwards, carrying one end of the gate, he tripped over a curb and fell when the employee kept carrying the tailgate forward towards the curb. The gate landed on top of Larrieu, causing a compression fracture of his lumbar spine.

¶ 8 Larrieu sued Best Buy in Colorado state court, alleging that he suffered personal injury on its property when the company, through its employee, violated the duty of care Best Buy owed him under Colorado's premises liability statute. Best Buy removed the case to federal court on diversity grounds pursuant to 28 U.S.C. § 1332 and subsequently filed a motion for summary judgment. After concluding that "[t]his case turns on whether this activity [*i.e.*, a Best Buy employee carrying a heavy tailgate with a customer while the customer walked backward] constitutes an activity conducted on Defendant's property within the meaning of the premises liability statute," the federal district court determined that the statute "imposes liability on landowners only for ac-

tivities inherently related to the land." *Larrieu*, No. 10–CV–01883–CMA–BNB, 2011 WL 3157011, at *2 (D.Colo. July 27, 2011). The court granted Best Buy's motion for summary judgment, ruling that, even if the Best Buy employee "had an obligation to properly guide [Larrieu] as he walked backward with a heavy gate, his failure to do so is not an activity inherently related to the land," so Larrieu could not recover under the premises liability statute. *Id.* at 3–4.

¶ 9 Larrieu appealed to the United States Court of Appeals for the Tenth Circuit. Noting that this case presents "a close question" of state law and an "important and novel [question] of state legal policy," the Tenth Circuit Court of Appeals certified to us the question of whether our premises liability statute applies "to injuries caused by a defendant-landowner's employee during an activity not directly or inherently related to the land." *Larrieu*, 491 Fed.Appx. at 868.

## II. Analysis

¶ 10 Upon considering the certified record and the briefs and oral arguments of the parties, we reformulate the question to ask whether the Colorado premises liability statute applies as a matter of law only to those activities and circumstances that are directly or inherently related to the land. As we have reformulated it, the certified question requires us to interpret the statute and to determine the meaning of the phrase "activities conducted or circumstances existing on such property." We answer "no" to the certified question.

¶ 11 We begin our analysis with a short discussion of the principles of statutory construction and the general purpose of the premises liability statute. We then apply our analysis to the reformulated certified question before us.

### A. Principles of Statutory Construction

¶ 12 In construing a statute, we ascertain and effectuate the General Assembly's intent. *In re Miranda*, 2012 CO 69, ¶ 9, 289 P.3d 957, 960; *see also Associated Gov'ts of Nw. Colo. v. Colo. Pub. Utils. Comm'n*, 2012 CO 28, ¶ 11, 275 P.3d 646, 649. We

apply the plain meaning of the statutory language, give consistent effect to all parts of a statute, and construe each provision in harmony with the overall statutory design. *Miranda,* 289 P.3d at 960. If the statutory language is ambiguous, we employ additional tools of statutory construction. · *Id.; see also* § 2–4–203, C.R.S. (2012).[1] We avoid interpretations that would produce absurd results. *Miranda,* 289 P.3d at 960; *S. Ute Indian Tribe v. King Consol. Ditch Co.,* 250 P.3d 1226, 1233 (Colo.2011); *see also* § 2–4–201(1)(c), (e), C.R.S. (2012).[2]

 ¶ 13 When the General Assembly legislates in a particular area, we presume it was aware of existing case law precedent. *Vigil v. Franklin,* 103 P.3d 322, 327 (Colo. 2004); *Pierson,* 48 P.3d at 1219. We generally construe statutes as consistent with the common law. *See Vigil,* 103 P.3d at 327. On the other hand, we acknowledge and respect the General Assembly's authority to modify the common law by statute. *Id.*

### B. Colorado Premises Liability Statute

¶ 14 The premises liability statute delineates duties owed by landowners to third persons who enter on the land under circumstances that cause those persons to be categorized as trespassers, licensees, or invitees. *Trailside Townhome Ass'n, Inc. v. Acierno,* 880 P.2d 1197, 1202 (Colo.1994). This statute applies to actions against a landowner for personal injuries occurring on its property when the landowner breaches the duty of care it owes to a plaintiff. *Springer v. City & Cnty. of Denver,* 13 P.3d 794, 803 (Colo.

2000). In enacting the statute, the General Assembly sought to "promote a state policy of responsibility by both landowners and those upon the land" and "to create a legal climate which will promote private property rights and commercial enterprise and will foster the availability and affordability of insurance." § 13–21–115(1.5)(a), (d). According to the General Assembly, the duties of landowners set forth in the statute differ from those that existed under the common law; rather, the purpose of the statute is "to protect landowners from liability in some circumstances when they were not protected at common law and to define the instances when liability will be imposed in the manner most consistent with the policies" set forth in the statute. § 13–21–115(1.5)(e).[3]

¶ 15 The premises liability statute defines "landowner" to include, "without limitation, an authorized agent or a person in possession of real property and a person legally responsible for the condition of real property or for the activities conducted or circumstances existing on real property." § 13–21–115(1). We have interpreted the term broadly. *See Pierson,* 48 P.3d at 1221 (broadly construing "landowner" to include individuals or entities who are authorized agents or persons in possession, including those legally conducting an activity on the property or legally creating a condition on the property); *see also Springer,* 13 P.3d at 804–05 (holding that a landowner may not delegate to an independent contractor the obligation to exercise reasonable care to protect invitees and licensees against dangers within the scope of the statute).[4]

1. Section 2–4–203(1) provides that, "[i]f a statute is ambiguous," a court "may consider among other matters":

 (a) The object sought to be attained; (b) The circumstances under which the statute was enacted; (c) The legislative history, if any; (d) The common law or former statutory provisions, including laws upon the same or similar subjects; (e) The consequences of a particular construction; (f) The administrative construction of the statute; (g) The legislative declaration or purpose.

2. When it enacts a statute, the General Assembly "is presumed" to intend "[a] just and reasonable result" that favors the "[p]ublic interest ... over any private interest." § 2–4–201(1)(c), (e).

3. In *Vigil,* we chronicled the legislature's reaction to common-law decisions we rendered concerning the duty of care landowners owe to entrants upon their property. If two points are clear from this history, they are that: (1) the legislature chose to adopt the common law classification system of trespasser, licensee, and invitee; and (2) the legislature spelled out its own definitions and duties of care for each of these classifications. *See Vigil,* 103 P.3d at 325–26.

4. The language of section 13–21–115(2) refers to an "injury occurring while on the real property of another." The words "of another" in this phrase describe the defendant "landowner's" property, distinguishing it from the property of the plaintiff. *See Pierson,* 48 P.3d at 1220–21 (defining "landowner" under the premises liabil-

¶ 16 The statute applies to a personal injury action that meets four requirements: (1) the action involves the plaintiff's entry on the landowner's real property; (2) the plaintiff's injury occurred while on the landowner's real property; (3) the injury occurred by reason of the property's condition, activities conducted on the property, or circumstances existing on the property; and (4) the landowner breached the duty of care it owed the plaintiff under the premises liability statute's classification of trespasser, licensee, or invitee. *See* 13–21–115(2). Section 13–21–115(3) provides applicable but differing standards for three classifications of claimants—trespassers, licensees, and invitees:

(a) A *trespasser* may recover only for damages willfully or deliberately caused by the landowner.

(b) A *licensee* may recover only for damages caused:

 (I) By the landowner's unreasonable failure to exercise reasonable care with respect to dangers created by the landowner of which the landowner actually knew; or

 (II) By the landowner's unreasonable failure to warn of dangers not created by the landowner which are not ordinarily present on property of the type involved and of which the landowner actually knew.

(c) (I) Except as otherwise provided in subparagraph (II) of this paragraph (c), an *invitee* may recover for damages caused by the landowner's unreasonable failure to exercise reasonable care to protect against dangers of which he actually knew or should have known.

(II) If the landowner's real property is classified for property tax purposes as agricultural land or vacant land, an invitee may recover for damages caused by the landowner's unreasonable failure to exercise reasonable care to protect against dangers of which he actually knew.

§ 13–21–115(3) (emphasis added).

¶ 17 Thus, the express, unambiguous language of the premises liability statute evidences the General Assembly's intent to establish duties of care landowners owe to persons who enter upon their property. *Vigil,* 103 P.3d at 323, 327–29. The particular statutory duty of care a landowner owes to an entrant upon his or her premises depends upon that entrant's classification as a statutorily defined trespasser,[5] licensee,[6] or invitee.[7] *See* § 13–21–115(3). While "a trespasser may recover only for damages willfully or deliberately caused by the landowner," § 13–21–115(3)(a), a licensee may recover for damages caused "[b]y the landowner's unreasonable failure to exercise reasonable care with respect to dangers created by the landowner of which the landowner actually knew" or by "the landowner's unreasonable failure to warn of dangers not created by the landowner which are not ordinarily present on property of the type involved and of which the landowner actually knew." § 13–21–115(3)(b). A landowner owes the highest duty of care to an invitee, who may "recover for damages caused by the landowner's unreasonable failure to exercise reasonable care to protect against dangers of which he actually knew or should have known." § 13–21–115(3)(I).

ity statute); *Trailside,* 880 P.2d at 1202 (holding that the premises liability statute delineates duties owed by "landowners" to third persons and does not apply where the plaintiff has the right to make use of the property independent of the defendant "landowner's" consent).

5. A "trespasser" is "a person who enters or remains on the land of another without the landowner's consent." § 13–21–115(5)(c).

6. A "licensee" is "a person who enters or remains on the land of another for the licensee's own convenience or to advance his own interests, pursuant to the landowner's permission or

consent." § 13–21–115(5)(b). This category includes social guests. *Id.*

7. An "invitee" is "a person who enters or remains on the land of another to transact business in which the parties are mutually interested or who enters or remains on such land in response to the landowner's express or implied representation that the public is requested, expected, or intended to enter or remain." § 13–21–115(5)(a). With respect to common areas under a landlord's control, this category includes tenants. *Lakeview Assocs., Ltd. v. Maes,* 907 P.2d 580, 586 & n.10 (Colo.1995).

## C. Application to this Case

¶ 18 The reformulated certified question before us—whether Colorado's premises liability statute applies as a matter of law only to those activities and circumstances that are directly or inherently related to the land—requires us to interpret the statute and to determine the meaning of the phrase "activities conducted or circumstances existing on such property." To the reformulated certified question, we answer "no." Contrary to Best Buy's argument, we hold that the statute is not, as a matter of law, restricted solely to activities and circumstances that are directly or inherently related to the land. That restriction does not appear in the statutory language, and we do not adopt it now. But we also reject Larrieu's position, which would read the statute far too broadly, extending its application to any tort that happens to occur on another's property. Instead, we determine that the premises liability statute applies to conditions, activities, and circumstances on the property that the landowner is liable for in its legal capacity as a landowner. *See* § 13–21–115(1), (2); *Pierson*, 48 P.3d at 1221. This analysis necessitates a fact-specific, case-by-case inquiry into whether: (a) the plaintiff's alleged injury occurred while on the landowner's real property; and (b) the alleged injury occurred by reason of the property's condition or as a result of activities conducted or circumstances existing on the property.

¶ 19 Best Buy wants us to draw a hard line by defining "activities conducted or circumstances existing on [a landowner's] property" to mean only those activities and circumstances that are "directly or inherently related to the land." But, we do not add words to a statute. *Boulder Cnty. Bd. of Comm'rs v. HealthSouth Corp.*, 246 P.3d 948, 951 (Colo.2011).

¶ 20 In making its argument, Best Buy misconstrues our observation in *Pierson* that Colorado's premises liability statute applies to activities or circumstances "directly related to the real property itself":

> Of course, the cause of action must arise out of an injury occurring on the real property of another and by reason of the condition of the property or *activities or circumstances directly related to the real property itself* in order to be within the rubric of the statute.

48 P.3d at 1221 (emphasis added) (citing § 13–21–115(2)). This passage from *Pierson* paraphrases the statute's basic predicate that a plaintiff's alleged injury must have occurred "while on the real property of [the landowner] and by reason of the condition of such property, or *activities conducted or circumstances existing on* such property." § 13–21–115(2) (emphasis added).

¶ 21 In order to understand our statement in *Pierson*, we must place it within the context of the case. There, the plaintiff, a motorist who was injured when he drove over an embankment and into a gravel pit, sued the pit operators. *Pierson*, 48 P.3d at 1215–16. The court of appeals held that the operators did not qualify as "landowners" under the statute because they did not actually own or lease the land. We reversed. We focused on the statutory definition of landowner contained in section 13–21–115(1), which includes "a person legally responsible for the condition of real property or for the activities conducted or circumstances existing on real property"—similar language to "by reason of the condition of such property, or activities conducted or circumstances existing on such property," the formulation that is at issue here in section 13–21–115(2).

¶ 22 We reasoned that this language could have one of two meanings. The first could be that "a person legally responsible for the condition of real property or for the activities conducted or circumstances existing on [the] property" under section 13–21–115(1) is simply someone who could be held legally liable for an alleged tort. *Pierson*, 48 P.3d at 1220. We rejected this reading as absurd and far too broad, as it would include a trespasser who had no connection to the land other than his presence there. *See id.* Instead, we adopted the second possibility—namely, that "a person legally responsible ..." is a person who is legally conducting the activity or creating the condition on the property that is alleged to have injured the plaintiff. *See id.* at 1221. As applied to the facts of that case, we held that the gravel pit operators could qualify as landowners because they were legally conducting the gravel pit operation on the land. *See id.* We remanded the case for

further factual development to determine whether the operators were actually responsible for the precise situation that injured the plaintiff. *See id.* at 1221 & n.7.

¶ 23 The sentence that Best Buy misconstrues occurs after our conclusion that a "landowner" includes a person who is responsible for legally conducting an activity or creating a condition on the property. Properly understood, our statement in *Pierson* was simply meant to reinforce the central holding of the case: that the statute applies to persons who are "legally conducting an activity on the property or legally creating a condition on the property." *Id.* at 1221. Thus, the lesson of *Pierson* is not that the premises liability statute is limited to activities or conditions directly or inherently related to the land, as Best Buy would have it. Rather, the statute includes activities or conditions that the "landowner" is conducting or creating on the property in its capacity as a "landowner."

¶ 24 *Pierson* also leads us to reject Larrieu's definition of the premises liability statute's scope—that is, as covering essentially any tort that occurs on the property of another. This interpretation of the coverage of the statute is far too broad; it would render much of the statute superfluous. As the Tenth Circuit pointed out, if the General Assembly intended the statute to govern all tortious activity that occurs on the land of another, it would have simply said so and would not have included the language of section 13–21–115(2) at issue here, which limits the statute's scope to injuries caused by "the condition of [the landowner's] property, or activities conducted or circumstances existing on such property." Like the first meaning of landowner that we rejected as absurd in *Pierson,* Larrieu's proposed definition would improperly sweep all tortious activity into the ambit of the premises liability statute.

■ ¶ 25 The question is whether Larrieu alleges he was injured "by reason of the

condition of [Best Buy's] property, or activities conducted or circumstances existing on such property," § 13–21–115(2), that Best Buy may be liable for in its legal capacity as a landowner. The answer to this question is "yes." Larrieu alleges that Best Buy, in its capacity as a landowner, was responsible for the activities conducted and conditions on its premises, including the process of assisting a customer with loading a freezer he had purchased from the retailer onto his truck. Indeed, while the exact boundaries of the premises liability statute's scope must be left to case-by-case development, this case fits squarely within its purview.[8]

¶ 26 The General Assembly intended that a broad range of activities causing injury to a person be included within the statute. At the same time, it intended that such activities occur on the real property of the landowner. Thus, if the injury to the plaintiff occurred off the landowner's property, then the plaintiff would have no claim under the statute. The "by reason of . . ." requirement builds an additional constraint into the premises liability statute, by tying the cause—not just the occurrence—of a plaintiff's injury to the landowner's property, and thereby ensuring that landowners are fairly held liable for such injuries.

¶ 27 Because it is impossible to delineate every type of incident that might trigger landowner liability under the statute, whether the plaintiff's alleged injury occurred by reason of the condition of the property or activities conducted or circumstances existing on the property depends on the specific facts alleged by the plaintiff in a given case. To defeat a claim brought under the statute, the defendant "landowner" may rebut these alleged facts in the same way it may rebut alleged facts concerning whether the plaintiff's alleged injury occurred on the defendant "landowner's" property.

■ ¶ 28 This is not to say that determinations about whether a plaintiff's alleged

---

**8.** We note that future factual development will be necessary in this case to determine whether Larrieu's alleged injury was caused by Best Buy's "unreasonable failure to exercise reasonable care to protect against dangers of which he actually knew or should have known." § 13–21–115(3)(c)(I) (defining a landowner's duty to an invitee). Further, we note that the Tenth Circuit, in its certification to us, stated that Best Buy concedes it was responsible for the actions of its employee in assisting Larrieu. *See Larrieu,* 491 Fed.Appx. at 866. We therefore leave for another day the question of how theories such as respondeat superior and vicarious liability relate to the premises liability act.

injury occurred by reason of a property's condition or as a result of activities conducted or circumstances existing on a property must always be left for the trier of fact. As in all cases, summary judgment is appropriate where the trial court determines that there is no genuine dispute as to any material fact and that the party moving for summary judgment is entitled to judgment as a matter of law.

¶ 29 Our reading of the premises liability statute harmonizes the General Assembly's stated purposes of "promot[ing] ... responsibility by both landowners and those upon the land" and "creat[ing] a legal climate which will promote private property rights and commercial enterprise and will foster the availability and affordability of insurance." § 13–21–115(1.5)(a), (d). Similarly, our reading of the statute does not interfere with the General Assembly's intent to "protect landowners from liability in some circumstances when they were not protected at common law." [9] § 13–21–115(1.5)(e). The premises liability statute logically achieves this goal without recourse to judicial insertions of additional limiting language.

### III. Conclusion

¶ 30 Accordingly, we return this case to the United States Court of Appeals for the Tenth Circuit for further proceedings.

---

9. For example, under the statute, a licensee may recover only for damages caused by a "landowner's unreasonable failure to exercise reasonable care with respect to dangers created by the landowner of which the landowner *actually knew*" or by a "landowner's unreasonable failure to warn of dangers not created by the landowner which are *not ordinarily present* on property of the type involved and of which the landowner *actually knew*."§ 13–21–115(3)(b) (emphasis added). The actual-knowledge requirement represents a substantial departure from the common law, where landowners owed licensees a duty of care regardless of whether they had actual or constructive knowledge of dangers. *Compare Kenney v. Grice,* 171 Colo. 185, 188, 465 P.2d 401, 403 (1970) (employing the Restatement Second of Torts' description of the duties owed to licensees with regard to conditions "the possessor knows [of] or has reason to know of," prior to our decision in *Mile High Fence Co. v. Radovich,* 175 Colo. 537, 489 P.2d 308 (1971)), *withWilson v. Marchiondo,* 124 P.3d 837, 841 (2007) (concluding that a "landlord would be liable" under the premises liability statute for a tenant's dog attacking a licensee "if he actually knew, prior to entering the lease, of the danger the dog presented"), *and see* 7 John W. Grund, J. Kent Miller & David S. Werber, *Colorado Personal Injury Practice—Torts and Insurance* § 19.8 (3d ed. 2012) ("The requirement that landowners have *actual* knowledge of a dangerous condition appears to eliminate the common-law provision for constructive notice."). The exemption for "dangers not created by the landowner which are ...*ordinarily present* on property of the type involved" is similarly more protective of landowners than was the common law. § 13–21–115(3)(b)(II) (emphasis added).