2013 COA 156

**Martin RIEGER, Plaintiff–Appellant,**

**v.**

**WAT BUDDHAWARARAM OF DENVER, INC., Defendant–Appellee.**

**Court of Appeals No. 12CA1875**

Colorado Court of Appeals,
Div. A.

Announced November 21, 2013

Mark A. Simon, Denver, Colorado, for Plaintiff–Appellant.

Lewis Brisbois Bisgaard & Smith, LLP, Colin C. Campbell, Joleen J. Mossoni Polk, Denver, Colorado, for Defendant–Appellee.

Opinion by CHIEF JUDGE LOEB

¶ 1 In this premises liability case, plaintiff, Martin Rieger, appeals the district court's summary judgment in favor of defendant, Wat Buddhawararam (the Temple). We affirm.

## I. Background and Procedural History

¶ 2 The following facts are undisputed from the district court record.

¶ 3 On July 26, 2010, Rieger was helping his friend and neighbor, Chris Margotta, trim a large tree on the Temple's property. Rieger and Margotta had agreed that Rieger would not be paid for his help and would do it as volunteer work. Margotta, whose wife was a member of the Temple, was also a volunteer and had arranged a group of men, including Rieger, to help with the project. Margotta provided all the tools, including chainsaws, ladders, and shears. Rieger had no interaction with the Temple prior to volunteering on the day he was injured. Margotta acted as the leader of the project, although for a part of the project, a group of monks from the Temple were observing. Late in the day, Rieger was holding the ladder for Margotta while Margotta was cutting branches from the tree. Margotta cut a branch, which fell onto Rieger, causing him serious injuries.

¶ 4 Rieger filed a complaint against the Temple, and the Temple designated Margotta as a nonparty at fault. Rieger then filed an amended complaint naming Margotta as a defendant but subsequently voluntarily dismissed him from the case, acknowledging that Margotta was immune from liability under the Volunteer Service Act, § 13–21–115.5, C.R.S.2013, and the Federal Volunteer Protection Act, 42 U.S.C. § 14501. However, Rieger maintained that the Temple was still vicariously liable for Margotta's negligence.

¶ 5 After discovery, the Temple filed a motion for summary judgment, asserting that there was no genuine issue as to any material fact and that, as a matter of law, the Temple was not liable for Rieger's injuries under the Colorado Premises Liability Act (CPLA), section 13–21–115, C.R.S.2013. Although Rieger argued, as he does on appeal, that the monks supervised the tree trimming, Rieger conceded and testified in his deposition that when the monks asked the volunteers to cut more branches, he voiced his objections to Margotta a number of times because he believed that they did not have the proper equipment to handle the heavier branches. Rieger also testified that Margotta agreed with his objections but "did not want to let the monks down," and when Margotta decided he was willing to continue the work, Rieger chose "to stand by [Margotta and] was going to hang with him." Rieger also argued he was an invitee, not a licensee for purposes of the CPLA.

¶ 6 The district court granted the Temple's motion for summary judgment, concluding and reasoning as follows:

[T]he Colorado Premises Liability Act constitutes the sole remedy against a landowner for physical injuries sustained on the landowner's property. *Vigil v. Franklin*, 103 P.3d 322 (Colo.2004). Volunteers are generally classified as licensees under the Colorado Premises Liability Act. *Grizzell v. Hartman Enterprises[, Inc.]*, 68 P.3d 551, 554 (Colo.App.2003).

. . . .

Plaintiff contends that he was an invitee, not a licensee, while working on Temple property. The Court is unpersuaded. It is undisputed that Plaintiff was part of a volunteer work crew which cut down tree branches on Temple property. Under the Colorado Premises Liability Act, Plaintiff constitutes a licensee.

Plaintiff also contends that the Temple should be held liable because it exercised control over the volunteers' work. However, Plaintiff admitted that the volunteers supplied the tools and that Mr. Margotta directed the work crew in all respects. Furthermore, Plaintiff has failed to show any danger that [the Temple] created and of which the volunteers were not aware. Finally, Plaintiff contends that the Temple is vicariously liable for Mr. Margotta's negligent direction of the project. However, where a landowner exercises no control over a volunteer's conduct beyond suggesting the general nature of a project, the landowner owes the volunteer no duty as a matter of law. *Cottam v. First Baptist Church of Boulder,* 962 F.2d 17 (10th Cir. 1992).

¶ 7 Rieger contends the district court erred in granting the Temple's motion for summary judgment. We disagree.

## II. Standard of Review

¶ 8 We review the grant of a summary judgment motion de novo. *W. Elk Ranch, L.L.C. v. United States,* 65 P.3d 479, 481 (Colo.2002).

¶ 9 Summary judgment is appropriate where the trial court determines that there is no genuine dispute as to any material fact and that the party moving for summary judgment is entitled to judgment as a matter of law. *Larrieu v. Best Buy Stores, L.P.,* 2013 CO 38, ¶ 6, 303 P.3d 558, 560.

¶ 10 The moving party has the initial burden to show that there is no genuine issue of material fact. Once this burden of production is satisfied, the burden then shifts to the nonmoving party to establish that there is a triable issue of fact. *Cont'l Air Lines, Inc. v. Keenan,* 731 P.2d 708, 712–13 (Colo.1987). Failure to meet this burden will result in summary judgment in favor of the moving party. *Casey v. Christie Lodge Owners Ass'n,* 923 P.2d 365, 366 (Colo.App.1996).

¶ 11 To properly review the grant of summary judgment in the case before us, we are called upon to interpret the CPLA, section 13–21– 115. Issues of statutory interpretation are legal issues, which we review de novo. *Candelaria v. People,* 2013 CO 47, ¶ 10, 303 P.3d 1202, 1204.

## III. Rieger's Status as a Volunteer and Licensee

¶ 12 Rieger contends the district court erred in concluding he was a licensee rather than an invitee for purposes of the CPLA. We disagree.

### A. Rieger Was a Volunteer

¶ 13 In order to analyze Rieger's status under the CPLA, we must first address the district court's conclusion that he was a volunteer.

¶ 14 A volunteer is one who does, or undertakes to do, something which he or she is not legally or morally obligated to do and the undertaking is not in pursuance or protection of his or her personal interests. *Heckman v. Warren,* 124 Colo. 497, 506, 238 P.2d 854, 859 (1951). A "volunteer" is defined in the Volunteer Service Act as "a person performing services for a nonprofit organization ... without compensation, other than reimbursement for actual expenses incurred." § 13–21–115.5(3)(c)(I), C.R.S.2013. One who voluntarily assumes to act as the servant of another cannot recover for personal injuries as a servant, although requested to act by a servant of the master, but the rule is otherwise where the volunteer has an interest in the work. *Heckman,* 124 Colo. at 506, 238 P.2d at 859.

¶ 15 On appeal, Rieger appears to make a general contention that he was not a volunteer, but he does not offer any evidence in support of this contention. To the contrary, the entire record, including admissions in his deposition, makes it clear that Rieger was a volunteer. Rieger does not dispute that he was not paid for his work at the Temple, nor does he dispute that he was not legally or morally obligated to assist with cutting the tree down at the Temple.

¶ 16 Accordingly, we discern no error in the district court's conclusion that Rieger was a volunteer.

### B. Rieger Was a Licensee

■ ¶ 17 Because Rieger was a volunteer, we also conclude that the district court properly ruled that Rieger, as a matter of law, was a licensee under the CPLA.

■ ¶ 18 Although Rieger phrases his contentions in terms of negligence, his right to recovery against the Temple is controlled by the CPLA, which provides the sole and exclusive remedy against a landowner for physical injuries on the landowner's property. *See Vigil,* 103 P.3d at 328–29. In that regard, the CPLA outlines the respective duties that a landowner owes to trespassers, invitees, and licensees and provides that a breach of those duties may result in liability for damages caused. *Lombard v. Colo. Outdoor Educ. Ctr., Inc.,* 187 P.3d 565, 570 (Colo. 2008).

¶ 19 Section 13–21–115(5)(a), C.R.S.2013, defines an "invitee" as

a person who enters or remains on the land of another to transact business in which the parties are mutually interested or who enters or remains on such land in response to the landowner's express or implied representation that the public is requested, expected, or intended to enter or remain.

An invitee may recover for damages caused by the landowner's unreasonable failure to exercise reasonable care to protect against dangers of which he actually knew or should have known. § 13–21–115(3)(c)(I), C.R.S. 2013.

¶ 20 Section 13–21–115(5)(b), C.R.S.2013, defines a "licensee" as "a person who enters or remains on the land of another for the licensee's own convenience or to advance his own interests, pursuant to the landowner's permission or consent." Section 13–21–115(3)(b), C.R.S.2013, provides the exclusive standard of care for a licensee, as follows:

A licensee may recover only for damages caused:

(I) By the landowner's unreasonable failure to exercise reasonable care with respect to dangers created by the landowner of which the landowner actually knew; or

(II) By the landowner's unreasonable failure to warn of dangers not created by the landowner which are not ordinarily present on property of the type involved and of which the landowner actually knew.

■ ¶ 21 Volunteers are generally classified as licensees. *Grizzell,* 68 P.3d at 554. For premises liability purposes, a volunteer occupies roughly the same position as an implied licensee. *Pifer v. Muse,* 984 S.W.2d 739, 742 (Tex.App.1998).

¶ 22 In *Grizzell,* a division of this court, under circumstances very similar to those present here, concluded that, for purposes of the CPLA, a volunteer is to be treated as a licensee. *See Grizzell,* 68 P.3d at 554. The division in *Grizzell* engaged in a thorough analysis of the issue, including considering cases from other jurisdictions, and concluded that the plaintiff there, who was a volunteer, was a licensee. *Id.* We find the division's reasoning in *Grizzell* persuasive, and based on that reasoning and the undisputed facts here, we similarly conclude that, as a matter of law, Rieger was a licensee.

¶ 23 Rieger argues that the Temple affirmatively encouraged him to enter its property, but despite Rieger's contention, there is nothing in the record to support this assertion. To the contrary, the record only demonstrates that Margotta asked Rieger to volunteer on the project and enter the Temple's property. Margotta, who Rieger concedes was also a volunteer—not an employee of the Temple—asked Rieger and other individuals to help him with clearing and trimming the tree; the Temple had no contact with Rieger and did not open the invitation to the public or to a class of the public. *Cf.Wycoff v. Grace Cmty. Church of Assemblies of God,* 251 P.3d 1260, 1268 (Colo.App.2010) (explaining that where a landowner affirmatively invited members of certain groups, such as a garden club or a girl scout troop, onto its property, those "members of the public" were invitees).

¶ 24 The cases cited by Rieger in support of his assertion that he was an invitee are distinguishable. *See id.* at 1267–68 (holding that the plaintiff was an invitee where the plaintiff and the defendant exchanged money, which the court determined was commercial business, and the court discerned that the

defendant had extended an invitation to classes or members of the public); *Lakeview Assocs., Ltd. v. Maes*, 907 P.2d 580, 585 (Colo.1995) (holding that the plaintiff was an invitee because the landlord-tenant relationship between the plaintiff and the defendants constituted a business relationship which benefitted both parties); *Mathias v. Denver Union Terminal Ry. Co.*, 137 Colo. 224, 229, 323 P.2d 624, 627 (1958) (holding that the plaintiff was an invitee because he was on the defendant's premises for a purpose connected with the business in which the occupant engaged, but the plaintiff became a licensee when he went onto a part of the premises he was not reasonably expected to enter). Here, by contrast, there was no mutual commercial benefit nor did Rieger's status change from an invitee to a licensee because he went onto a different part of the Temple's premises.

¶ 25 Accordingly, we conclude the district court did not err in ruling that Rieger was a licensee.[1]

### IV. Vicarious Liability

¶ 26 Rieger contends that, although Margotta is immune from liability under section 13–21–115.5(4)(a), C.R.S.2013, of the Volunteer Service Act, the district court erred in holding that the Temple is not vicariously liable for Margotta's negligence. We disagree.

### A. The District Court's Ruling

¶ 27 In holding that the Temple is not vicariously liable for Margotta's negligence, the district court relied on *Cottam v. First Baptist Church*, 756 F.Supp. 1433 (D.Colo. 1991), *aff'd*, 962 F.2d 17 (10th Cir.1992) (unpublished table decision).

¶ 28 In *Cottam*, the plaintiff was injured while working as part of a volunteer group that was cutting down a tree and building a new foot bridge across a creek on the defendant church's property. The plaintiff received no monetary compensation for his assistance on the bridge project. The plaintiff sued the church, alleging, as pertinent here, that the church was negligent for, inter alia, failing to establish rules for the safe performance of the work; failing to give any instructions as to safe work practices; failing to warn of inherent dangers of the work; and failing to provide the workers with assistance or supervision by experienced individuals. *Id.* at 1434. There is no indication that the plaintiff in *Cottam* expressly asserted a claim for vicarious liability.

¶ 29 Although the facts in *Cottam* appear to raise a classic case of premises liability, which would be governed under Colorado law by the CPLA, neither the federal district court nor the Tenth Circuit relied on, or even mentioned, the CPLA in their respective opinions. Rather, both courts analyzed the issue of whether the church owed a duty to the plaintiff under the common law of Colorado (noting there was no case directly on point) and distinguishing between the common law theory of "gratuitous employees" and volunteers. The federal district court granted the church's motion for judgment notwithstanding the verdict, ruling that the church had no common law duty to the plaintiff because he was a volunteer and because the church did not control his actions or those of the other volunteers on the project. The Tenth Circuit affirmed.

¶ 30 The district court here concluded that the undisputed evidence in the record showed that the Temple had no control over the volunteers (including Margotta and Rieger), that the Temple did not create the danger to Rieger, and that, therefore, summary judgment was appropriate. Citing *Cottam*, the district court ruled as follows:

---

1. Rieger has not argued, either in the district court or on appeal, that the Temple violated the CPLA's duties to him as a licensee, as set forth in section 13–21–115(3)(b), and thus, we need not address that issue here. Rather, his principal argument under the CPLA has always been that he was an invitee rather than a licensee. On appeal, Rieger makes a general assertion that the district court erred in finding that there was no evidence that the Temple's negligence caused his injuries. That assertion fails for two reasons. First, the common law negligence standard is not the correct standard here; only the standard and duties articulated in the CPLA apply. Second, because we have concluded Rieger was not an invitee, we need not consider whether he proffered sufficient evidence to preclude summary judgment on the basis that the Temple violated the CPLA's duty to invitees under section 13–21–115(3)(c), C.R.S.2013.

Plaintiff also contends that the Temple should be held liable because it exercised control over the volunteers' work. However, Plaintiff admitted that the volunteers supplied the tools and that Mr. Margotta directed the work crew in all respects. Furthermore, Plaintiff has failed to show any danger that Defendant created and of which the volunteers were not aware.

Finally, Plaintiff contends that the Temple is vicariously liable for Mr. Margotta's negligent direction of the project. However, where a landowner exercises no control over a volunteer's conduct beyond suggesting the general nature of a project, the landowner owes the volunteer no duty as a matter of law.

¶ 31 We agree with the district court's ultimate conclusion that, under the circumstances here, the Temple is not vicariously liable for Margotta's negligence. However, we do so based on reasoning different from that of the district court.

#### B. Applicable Law

¶ 32 Section 13–21–115(2), C.R.S.2013, provides in relevant part:

> In any civil action brought against a landowner by a person who alleges injury occurring while on the real property of another and by reason of the condition of such property, or activities conducted or circumstances existing on such property, the landowner shall be liable *only* as provided in subsection (3) of this section.

(Emphasis added.) In enacting the CPLA, the General Assembly clearly and manifestly expressed its intent, through the plain language of the statute, to abrogate the common law of landowner duties. *Vigil*, 103 P.3d at 329; *Thornbury v. Allen*, 991 P.2d 335, 340 (Colo.App.1999) ("A plaintiff may recover against a landowner only pursuant to section 13–21–115 ... and not under any other theory of negligence, general, or otherwise.").

¶ 33 In construing a statute, we ascertain and effectuate the General Assembly's intent. *Larrieu*, 303 P.3d at 560. We apply the plain meaning of the statutory language, give consistent effect to all parts of a statute, and construe each provision in harmony with the overall statutory design. *Id.* at 303 P.3d at 560–61. On the one hand, we generally construe statutes as consistent with the common law. *Id.* at 303 P.3d at 561. On the other hand, we acknowledge and respect the General Assembly's authority to modify the common law by statute. *Id.*

¶ 34 Vicarious liability is "[l]iability that a supervisory party (such as an employer) bears for the actionable conduct of a subordinate or associate (such as an employee) based on the relationship between the two parties." *Black's Law Dictionary* 998 (9th ed. 2009); *see Moses v. Diocese of Colo.*, 863 P.2d 310, 329 (Colo.1993) ("The agency doctrine of vicarious liability is based on the theory of respondeat superior which postulates that a master may be liable for the acts of an agent acting on the master's behalf."); *Just in Case Bus. Lighthouse, LLC v. Murray*, 2013 COA 112, ¶ 65, 2013 WL 3778184 (vicarious liability " 'is imputed based on the tortious acts of another' " (quoting Restatement (Third) of Torts: Apportionment of Liability § 13 (2000))).

#### C. Analysis

¶ 35 We first address and reject Rieger's argument that his vicarious liability claim is somehow cognizable under section 13–21–115.5, the Volunteer Service Act. Section 13–21–115.5(4)(a) provides generally that individual volunteers for nonprofit organizations are immune from civil liability in any action on the basis of any act or omission resulting in damage or injury.[2]

¶ 36 Section 13–21–115.5(4)(b)(I), C.R.S. 2013, provides, as relevant here:

> [N]othing in [section 13–21–115.5] shall be construed to bar any cause of action against a nonprofit organization ... or change the liability otherwise provided by law of a nonprofit organization ... arising out of an act or omission of a volunteer exempt from liability ... under this section.

---

**2.** As noted, this is why Rieger voluntarily dismissed Margotta as a defendant in the case. There is no dispute in this case that Margotta was a volunteer and that the Temple is a nonprofit organization.

¶ 37 To the extent Rieger argues that subsection (4)(b)(I) creates a new cause of action for vicarious liability, he is wrong. We agree with the Temple that this statute does not create a new cause of action that does not otherwise exist under the law and that nothing in section 13–21–115.5 serves to expand landowner liability beyond that recognized in the CPLA.

¶ 38 Whether and how the common law theory of vicarious liability is applicable where, as here, a volunteer-licensee brings a premises liability claim against a landowner, appears to be an issue of first impression in Colorado. The parties have not cited, and we have not found, any Colorado case expressly resolving or even addressing this issue. Indeed, in *Larrieu,* our supreme court's most recent opinion interpreting the CPLA, the court specifically stated that it would "leave for another day the question of how theories such as respondeat superior and vicarious liability relate to the premises liability act." *Larrieu,* ¶ 25 303 P.3d at 564 n.8.[3] *But see Reid v. Berkowitz,* 2013 COA 110, ¶¶ 35–37, 315 P.3d 185 (explaining that a landowner could not delegate his duty of care, under the CPLA, to his independent contractors and thus had a duty of care to the plaintiff, a licensee, when the defendant knew of a dangerous condition on his premises).

¶ 39 We conclude that, under the very narrow circumstances here, the plain language of section 13–21–115(1), (1.5), and (2), C.R.S.2013, compels the conclusion that the Temple is not vicariously liable for Margotta's negligence under the CPLA. This interpretation is also consistent with Colorado case law interpreting the CPLA and the General Assembly's intent in enacting that statute and with analogous out-of-state authority addressing whether state tort reform acts abrogated the common law doctrines of respondeat superior and indemnity.

¶ 40 As noted above, the CPLA is the sole remedy for plaintiffs bringing claims against landowners, and thus, plaintiffs must prove that defendants failed to adhere to the standards of care set forth in the CPLA, according to the CPLA status designations of invitee, licensee, and trespasser. *See Casey,* 923 P.2d at 366.

¶ 41 In that regard, the language of the CPLA itself is clear that the CPLA provides the sole remedy against landowners for injuries occurring on their property, and other common law actions are preempted. Thus, section 13–21–115(2) provides, as pertinent here:

> In *any* civil action brought against a landowner by a person who alleges injury occurring while on the real property of another ..., the landowner shall be liable *only* as provided in subsection (3) of this section [identifying the applicable standards of care regarding trespassers, licensees, and invitees].

(Emphasis added.)

¶ 42 Further, the articulated purposes of the CPLA demonstrate the General Assembly's intent to limit landowner liability when it enacted the CPLA. Accordingly, the General Assembly sought to "promote a state policy of responsibility by both landowners and those upon the land" and "to create a legal climate which will promote private property rights and commercial enterprise and will foster the availability and affordability of insurance." § 13–21–115(1.5)(a), (d), C.R.S.2013. Moreover, the General Assembly stated that the purpose of the 1990 amendments to the CPLA was "to protect landowners from liability in some circumstances when they were not protected at common law and to define the instances when liability will be imposed in the manner most consistent with the policies set forth in ... subsection (1.5)." § 13–21–115(1.5)(e), C.R.S.2013.

---

3. The issue before the supreme court in *Larrieu* was whether the CPLA applies as a matter of law only to those activities and circumstances that are directly or inherently related to the land. *Id.* at 303 P.3d at 559. The court's answer to that question was "no." *Id.* at 303 P.3d at 559.

*Larrieu* did not involve a volunteer, as is the case here. Indeed, in that case, the parties agreed that the plaintiff was an invitee, and the defendant conceded that its employee (who was involved in the incident that injured the plaintiff) was acting within the scope of his employment.

¶ 43 Colorado case law has consistently recognized and acknowledged that the CPLA abrogated and preempted the common law as to landowner liability with the purpose of limiting such liability to the claims expressly set forth in the statute. *See Larrieu*, ¶¶ 14, 29, 303 P.3d at 561, 565; *Vigil*, 103 P.3d at 331 ("In [the CPLA], the General Assembly intended to establish an exclusive specification of the duties landowners owe to those injured on their property. As such, common law landowner duties do not survive its enactment."); *Grizzell*, 68 P.3d at 553 (the CPLA "was adopted to limit the exposure of landowners for injuries sustained by persons on their property"); *Thornbury*, 991 P.2d at 340 ("A plaintiff may recover against a landowner only pursuant to [the CPLA] and not under any other theory of negligence, general, or otherwise."); *Casey*, 923 P.2d at 367 (in a premises liability case, affirming the trial court's denial of the plaintiff's motion to amend her complaint to add claims for negligent supervision and negligent retention on the ground that such claims were barred by the provisions of the CPLA).

¶ 44 Additionally, analogous case law from other states is instructive. The Utah Supreme Court addressed a similar issue in *Bishop v. GenTec Inc.*, 48 P.3d 218 (Utah 2002). There, the court considered the interaction between Utah's Liability Reform Act (the LRA) and the common law doctrine of respondeat superior, which the Utah Legislature did not explicitly preempt when it passed the LRA. *Id.* at 221–22. The court noted that when a legislature does not explicitly provide language that the statute is intended to preempt the common law, courts must consider whether the statute's structure and purpose or nonspecific statutory language nonetheless reveals a clear, but implicit, preemptive intent. *Id.* at 221–22 (citing *Barnett Bank v. Nelson*, 517 U.S. 25, 31, 116 S.Ct. 1103, 134 L.Ed.2d 237 (1996)). The court looked to the statute's structure and purpose to determine the legislature's implied intent and concluded that the "common law must necessarily give way to the statute." *Id.* at 222 (holding that the common law "stand[s] as an obstacle to the accomplishment and execution of the full purposes and objectives of the legislature" (quoting

*Barnett*, 517 U.S. at 31, 116 S.Ct. 1103)). Accordingly, the court held that the LRA precludes the application of the common law doctrine of respondeat superior. *Id.* at 228. Here, as discussed above, the Colorado General Assembly has expressly preempted the common law as to landowner liabilities.

¶ 45 Similarly, the Georgia Court of Appeals, in a premises liability case not involving a volunteer, addressed the question whether a Georgia statute relating to apportionment of damages precluded common law indemnity claims. *Dist. Owners Ass'n v. AMEC Envtl. & Infrastructure, Inc.*, 322 Ga.App. 713, 747 S.E.2d 10 (Ga.Ct.App.2013). The court stated, "[I]f the General Assembly had intended to create such a cause of action when it enacted the statute it would have said so." *Id.* at 14.

¶ 46 The cases cited by Rieger are distinguishable and do not compel a contrary conclusion. *See Lombard*, 187 P.3d at 570 n. 2, 575–76 (holding that where the parties did not dispute that the plaintiff was an invitee, the plaintiff presented sufficient evidence to overcome summary judgment with regard to the CPLA standard for invitees); *Wycoff*, 251 P.3d at 1268 (holding that the plaintiff was an invitee where the nonprofit defendant-landowner affirmatively encouraged her to enter the premises, and there was an implicit assurance in this invitation that the landowner would act with reasonable care to protect her).

¶ 47 We reject Rieger's argument that if a nonprofit landowner cannot be held vicariously liable for the actions of its volunteers on its property, because the volunteers are themselves immune from liability, then other volunteers injured by fellow volunteers have no legal recourse. To the contrary, a volunteer such as Rieger has the same legal recourse under the CPLA as all other plaintiffs. Here, Rieger simply had to establish the Temple's liability under the applicable standard, which, as a matter of law here, would be for a licensee. Rieger's claim here fails for three reasons. First, he only argued that he was an invitee, which, we have concluded, he was not. Second, as noted above, he did not even purport to raise a genuine issue of material fact as to the Temple's duty

to him under the CPLA standard for licensees. *See* § 13-21-115(3)(b). Third, even if he had made such an argument, the undisputed evidence in the record shows that the Temple did not create any danger nor did Rieger even allege any failure to warn by the Temple. *See id.*

¶ 48 Accordingly, under the specific circumstances here, we conclude that the CPLA does not provide a basis for holding the Temple vicariously liable for Margotta's negligence. Our reading of the CPLA harmonizes with its stated purposes, *see Larrieu,* 303 P.3d at 565, and does not interfere with the General Assembly's intent to protect landowners from liability in some circumstances when they were not protected at common law. *Id.* In reaching our conclusion, we emphasize that our holding is limited to the facts and circumstances present here— both Margotta and Rieger were volunteers; the record shows that the Temple did not create any danger, nor did it provide any supervision or control over the project or the volunteers; at most, the Temple's monks simply expressed a general desire that some volunteers help trim the tree. *See Cottam,* 756 F.Supp. at 1439 (no supervision or control where the defendant church only suggested the general parameters of the project). In that regard, we express no opinion whether and how the doctrine of vicarious liability may apply to other factual scenarios under the CPLA. *See e.g. Reid,* ¶¶ 35–37 (discussing vicarious liability in the context of a landowner who could not delegate his duty of care, under the CPLA, to his independent contractors).

¶ 49 Thus, we conclude the district court did not err in determining that the Temple was not vicariously liable for Margotta's negligence and that summary judgment was appropriate.

¶ 50 The judgment is affirmed.

JUDGE PLANK * and JUDGE NIETO* concur.